**In re Thomas Roy TRANMER, and Sheri Lynn Tranmer, Debtors.**

**No. 06–60353–13.**

United States Bankruptcy Court, D. Montana.

Nov. 16, 2006.

---

Kraig C. Kazda, Hartelius, Ferguson, Baker and Kazda, Great Falls, MT, for Debtors.

## MEMORANDUM OF DECISION

RALPH B. KIRSCHER, Bankruptcy Judge.

Pending in this Chapter 13 bankruptcy is confirmation of Debtors' Chapter 13 Plan and the Trustee's objections thereto based upon the "disposable income" test of 11 U.S.C. § 1325(b)(1)(B) and, by reference, 11 U.S.C. § 707(b)(2)(A)(ii). The Trustee objects that Debtors' transportation expenses exceed the Standards issued by the United States Internal Revenue Service ("IRS"), and that Debtors' monthly $15.00 in charitable contributions are not allowed under § 1325(b). After due notice a hearing on confirmation was held at Great Falls on July 20, 2006. The Debtors were represented at the hearing by attorney Kraig C. Kazda ("Kazda"), of Great

Falls, Montana, and Debtor Thomas Roy Tranmer ("Thomas") testified. The Chapter 13 Trustee Robert G. Drummond, of Great Falls, Montana, appeared. Debtors' Exhibits ("Ex.") 1 and 2 were admitted into evidence by stipulation. At the conclusion of the parties' cases-in-chief the Court granted the parties time to file simultaneous briefs, which have been filed and reviewed by the Court, together with the record and applicable law. This matter is ready for decision. For the reasons set forth below the Trustee's objections to confirmation will be sustained and confirmation of Debtors' Plan denied by separate Order.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) involving confirmation of a plan. At issue is: (1) whether the Debtors' Chapter 13 Plan satisfies the "disposable income" requirement of § 1325(b)(1)(B) when their monthly gasoline expense exceeds by $180 the amount allowed debtors under IRS Standards which are applicable pursuant to § 1325(b)(3) and § 707(b)(2)(A)(ii); and (2) whether Debtors' monthly $15.00 charitable contributions are allowable under §§ 1325(b)(2) and (b)(3). This memorandum includes the Court's findings of fact and conclusions of law.

## FACTS

Thomas and Sheri Lynn Tranmer ("Sheri") are married and live in Brady, Pondera County, Montana. They have two (2) children—daughter Ashleigh, age 18 and son Matthew age 19, both of whom have moved out of the family home to Great Falls. Sheri works in Great Falls as a medical scheduler for the Great Falls Clinic. Thomas works in Dutton as a teacher for the Dutton–Brady public schools.

The Debtors filed their Chapter 13 petition on May 22, 2006, together with their Schedules, Statement of Financial Affairs, Chapter 13 Plan, and Form B22C "Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income"[1]. Schedule B lists four (4) motor vehicles: a 1990 Buick Century, a 2003 Chevrolet Monte Carlo, 1970 Ford truck and a 1994 Chevrolet Beretta. Thomas testified that Sheri drives the Monte Carlo and he drives the Ford truck. He testified that the 1990 Buick Century is their daughter Ashleigh's vehicle and that they purchased fuel for her during the months of March, April and May 2006, but that Ashleigh moved in May of 2006 and is now independent and Debtors no longer pay for her gasoline. Their son Matthew drives the 1994 Chevrolet Beretta and pays for his own gasoline, with certain exceptions marked on Ex. 1.

Debtors' Schedule I lists their combined monthly income in the total amount of $3,886.14. Schedule J lists their current monthly expenditures in the total amount of $3,735.33, including $600 for transportation and $15.00 in charitable contributions, leaving a monthly net income of $150.81. Thomas testified that their $15.00 monthly charitable contributions are calculated from a yearly average of gifts they make to clubs at the school where Thomas teaches, including for a tax-deductible jumping rope activity. He testified that the students of the school where he works have come to expect such contributions, and Debtors intend to continue making them.

On Form B22C Debtors checked the boxes on the top of the first page indicating that "Disposable income is determined

---

1. Official Form B22C is required by F.R.B.P. [Interim] 1007(b)(6). *See In re McGuire,* 342 B.R. 608, 610 n. 2 (Bankr.W.D.Mo.2006).

under § 1325(b)(3)" and the applicable commitment period is 5 years. Debtors reported total income at Part I, Line 11 as $5,230.86. At Part III "Application of § 1325(b)(3) for Determining Disposable" Debtors note at Line 21 that their monthly income exceeds the applicable median family income from Lines 16/22 available at *www.usdoj.gov/ust.* Because their income exceeds the median, deductions for living expenses such as food, clothing, housing, utilities and transportation are calculated at Subpart A of Part IV of Form B22C under § 1325(b)(3) at Line 23.

Line 27 of Debtors' Form B22C states the IRS Local Standard for transportation; vehicle operation expense for 2 vehicles, West Census Region, as $420.00. Thomas testified that the Debtors' actual average transportation expense exceeds $600 per month for gasoline and maintenance because of the Debtors' work commutes to Great Falls and Dutton, respectively. Thomas testified that Sheri drives 100 miles per day round trip when she commutes to work from Brady to Great Falls and he drives 30 miles per day round trip to his employment in Dutton, Montana. Under cross examination by the Trustee Thomas admits that he drives his Ford truck 5 days per week to the Dutton public school during the school year, but that during June when school is off he only travels 1 or 2 times per week to Dutton for football camps.

Debtors' total expenses at Line 38 of Form B22C states the total expenses allowed under IRS standards as $3,841.70, and after adding additional deductions allowed under § 707(b)(2), Debtors' total expenses are stated at Line 52 as $4,956.02. Part VI of Form B22C determines monthly disposable income by subtracting the

total deductions of $4,956.02 from total currently monthly income of $5,230.86, with the resulting monthly disposable income under § 1325(b)(2) stated at Line 58 of $274.84.

Line 59 then provides for "Other Expenses" with the following instructions:

List and describe any monthly expense, not otherwise stated in this form, that are required for the health and welfare of you and your family that you contend should be an additional deduction from your currently monthly income under § 707(b)(2)(A)(ii)(I). If necessary, list additional sources on a separate page. All figures should reflect your average monthly expense for each item. Total the expenses.

On Line 59a Debtors entered "Gas; Please See Exhibit 'A' " with a monthly amount stated as $180.00. On their attachment to Form B22C, Ex "A", Debtors state:

Debtor's [sic] must travel 130 miles per day for work. They travel this 130 miles 5 days per week. Additionally, Debtors who live in Brady, Montana, must travel to Great Falls on a regular basis on the weekends in order to obtain food and other necessities. As such, question 27 of the means test, which allows for $420.00 for transportation expenses, does not adequately cover the Debtors['] actual transportation expenses.

Ex. 1 lists the Debtors' gasoline purchases from 4/15/06 through 6/29/06 at Mountain View Co-op in Black Eagle[2], Montana, where Thomas testified Sheri makes her gas purchases. Thomas testified he buys his fuel in Brady. Certain charges on Ex. 1 are marked as being for

---

**2.** Thomas testified that Mountain View Co-op owns stations in towns other than Black Ea-gle.

Debtors' son, Matt[3], daughter Ashleigh and her boyfriend Cody, which Thomas admitted were not Debtors' expenses. Thomas testified that the Debtors' average monthly fuel expense from Ex. 1 is $506 per month.

Ex. 2 shows car repair bills for Sheri's 2003 Chevrolet Monte Carlo. The first bill is for tires in the amount of $237.74 dated 5/31/2006 at Sears in Great Falls; and the second is for brake work from Midas Auto Service Experts dated 5/23/06 for $295.95 for Sheri's car. Thomas testified that Debtors also incur expenses for tune-ups and oil changes for Sheri's car and Thomas' Ford pickup, which total together with fuel and maintenance for their 2 vehicles more than $600 per month, or $180 more than the $420 IRS Standard from Line 27 of Form B22C.

In addition Thomas testified that during June, although he drove about forty percent (40%) less during the summer, fuel costs increased from $2.60 to $2.80 per gallon[4]. Thomas' Ford truck does not get as good gas mileage as Sheri's Monte Carlo. Thomas testified that the Debtors' expenditure for gasoline is reasonable because he was transferred to Dutton for his teaching job and must drive there for work each day, and Sheri wants to work in Great Falls and must commute to work. He testified that Brady has no shopping or medical services and the Debtors must drive to Great Falls for medical services and shopping[5].

Thomas testified that it is necessary for both Debtors to travel and work in order to fund their Chapter 13 Plan. Their Plan provides for monthly payments in the sum of $150.00 for 60 months. The Chapter 13 Trustee filed objections to confirmation on July 3, 2006, on the grounds that Debtors' Plan fails to commit 100% of their disposable income as required by § 1325(b)(1)(B) and that Debtors' actual expenditures for gasoline are not an exception to the IRS Standards applicable under § 707(b)(2)(A)(ii). The Trustee also objected to the $15 per month charitable contribution because they are allowed under § 707(b)(1) but not allowed under § 1325(b). The Debtors filed a response on July 19, 2006, arguing that § 1325(b)(1) requires that Debtors pay only their "projected" disposable income, which is different than disposable income for purposes of the means test. With respect to their charitable contributions the Debtors argued that Congress specifically listed charitable contributions under § 1325(b)(2) and therefore intended that they be permitted.

## DISCUSSION

### I. Contentions of the Parties.

The Trustee objects to confirmation of Debtors' Plan because of their $15 monthly charitable contribution and their $180 in gas expenditures over the IRS Standard, and argues that the Plan fails to pay the $274.84 disposable income figure from Form B22C and so fails to satisfy the disposable income requirement of § 1325(b)(1)(B). The Trustee argues that § 1325(b)(3) requires that "amounts reasonably necessary to be expended" be determined in accordance with § 707(b)(2) which applies the IRS National, Local Standards, and Other Necessary Expenses

---

**3.** Thomas testified that Matthew is 19 years old and the purchases marked "Matt" on 6/9/06, 6/11/06 and 7/20/06 ($5.79) on Ex. 1 were incurred during Matthew's move to Great Falls and his job search.

**4.** The Court takes judicial notice that fuel costs have increased significantly since June of 2006 and at the present time are again decreasing.

**5.** Thomas testified that they also go shopping in Conrad, Montana.

and does not allow additional transportation expenses even if Debtors' actual gasoline expenditures exceed the IRS Standards. The Trustee cites Hon. Eugene Wedoff from *Wedoff, Means Testing in the New § 707(b)*, 79 Am.Bankr.L.J. 231, 256, 262 (2005) as providing that the IRS Local Standards take into account local variations in expenditures and act as a cap from which Debtors may not depart. The Trustee also cites the IRS Manual "Financial Analysis Handbook", Section 5.15.1.10 (Other Expenses), and argues that transportation expenses are not listed as additional exceptions in § 707(b)(2)(A)(ii) which lists specific additional expenditures by category. The Trustee contends that the phrase "projected disposable income" cannot be used to ignore the formula for "current monthly income" under 11 U.S.C. § 101(10A) and the expenses specifically allowed under § 707(b)(2). The Trustee argues that the formula for "amounts reasonably necessary to be expended" under 1325(b)(3) is rigid, not discretionary, and must be based solely on § 707(b)(2)(A) and Form B22C. With respect to Debtors' additional gasoline expense, the Trustee contends that Thomas failed to explain his continued driving during the summer when he was not employed full time, and failed to show evidence that the Debtors' additional gasoline expense is reasonable.

With respect to Debtors' charitable expense [6] the Trustee argues that charitable contributions are not authorized under the means test by the language of § 707(b)(2) or legislative history, or as a condition of the Debtors' employment as provided in the IRS Manual and Standards [7]. Since § 1325(b)(3) incorporates only sections 707(b)(2)(A) and (B) and not § 1325(b)(2), the Trustee argues, Congress put into place the strict test appearing at § 707(b)(2) and did not incorporate § 1325(b)(2)'s allowance for charitable contributions. The Trustee seeks a holding that Debtors may not increase their transportation expenditures above the IRS Local Standards referenced in § 1325(b)(3) and § 707(b)(2), and may not include charitable contributions in calculating disposable income of above-median debtors under those sections.

The Debtors contend that, notwithstanding § 1325(b)(2) and Form B22C, they should only be required to pay unsecured creditors their "projected disposable income" under § 1325(b)(1)(B). Debtors cited *In re Jass*, 340 B.R. 411 (Bankr.D.Utah 2006) for the proposition that "disposable income" as defined by § 1325(b)(2) and Form B22C is not the same as "projected disposable income" required by § 1325(b)(1)(B), based on the clear and unambiguous language of § 1325(b)(1)(B) and the difference between the two phrases. Debtors argue that "projected disposable income" is future-oriented and requires courts to consider future and past finances in determining compliance with § 1325(b)(1)(B). Debtors argue that they are entitled to confirmation if they can sustain the burden of showing that their "disposable income" from Form B22C does not reflect their "projected disposable income" based on Schedules I and J. Debtors contend that the underlying policy of the Bankruptcy Code to provide debtors with a fresh start would be undercut if this Court adopts the Trustee's "cookie cutter" position based solely on Form B22C, be-

---

**6.** The Trustee' misstates the amount in his brief, p. 11, as $25 per month.

**7.** The Trustee concedes that charitable contributions are still allowed for below-median income debtors under the holding of *Drum-mond v. Cavanagh (In re Cavanagh)*, 250 B.R. 107 (9th Cir. BAP 2000), but that § 1325(b)(3) requires a separate analysis for above-median income debtors under § 1325(b)(3).

cause they "simply will not be able to make these payments resulting in the dismissal of the case."

Debtors argue that they are entitled to make their $15.00 monthly charitable contributions under § 1325(b)(1)(B) as part of their "projected disposable income". Debtors cite § 1325(b)(2)(A)(ii) allowing for contributions and argues that § 1325(b)(3) is ambiguous when read in conjunction with § 1325(b)(2)(A)(ii), suggesting that a reasonable interpretation of § 1325(b)(3) is that it defines expenses in addition to the expenses allowed under § 1325(b)(2)(A), as shown by the example of United States Trustee's inclusion in Form B22C of question 45 calling for continued charitable contributions. Debtors imply that the language of § 1325(b) is not plain and thus the Court may consider relevant legal practice prior to changes in the statute, in particular the amendments to § 1325(b) by the Religious Liberty and Charitable Donation Protection Act of 1998, Pub.L. No. 105–183, which specifically allowed charitable contributions at § 1325(b)(2)(A)(ii). Debtors argue that allowing only below-means debtors to make charitable contributions would produce an absurd result, and the intention of Congress to allow charitable contributions should control rather than the strict language of the statute.

## II. § 1325(b)—"Disposable Income".

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 *must be present* and the debtor has the burden of proving that each element has been met." *In re Barnes,* 32 F.3d 405, 407 (9th Cir.1994); *In re Andrews,* 49 F.3d 1404, 1408 (9th Cir.1995); *Chinichian v. Campolongo,* 784 F.2d 1440, 1443–44 (9th Cir.1986) (citing *In re Elkind,* 11 B.R. 473,

476 (Bankr.D.Colo.1981)) (emphasis added).

The Trustee's objection raises the issue of the "disposable income" test under § 1325(b)(1)(B) which provides:

(b)(1) If the trustee ... objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

* * * * * *

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to made payments under the plan.

*See In re Sutton,* 19 Mont. B.R. 220, 227–28 (Bankr.D.Mont.2001) (construing § 1325(b)(1)(B) prior to 2005 revisions).

"Disposable income," as defined at § 1325(b)(2), underwent substantial revision in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub.L. 109–8) ("BAPCPA"). BAPCPA became effective for purposes of the instant case on October 17, 2005. Section 1325(b)(2) now provides, in pertinent part:

For purposes of this subsection, "disposable income" means current monthly income[8] received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

---

8. "Current monthly income" is defined at 11 U.S.C. § 101(10A).

(ii) for charitable contributions that meet the definition of "Charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

■■■ Debtors cite *Jass* for the proposition that "disposable income" as defined by § 1325(b)(2) is not the same as "projected disposable income" required under § 1325(b)(1)(B). The Court finds that argument unpersuasive in several respects. First, courts should disfavor interpretations of statutes that render statutory language superfluous, and so long as no positive repugnancy between two laws exist, a court must give effect to both. *Connecticut National Bank v. Germain*, 503 U.S. 249, 252–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). Courts generally avoid construing one provision in a statute so as to suspend or supersede another provision. *Rake v. Wade*, 508 U.S. 464, 471–72, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993).

Debtors' argument that "projected disposable income" in § 1325(b)(1)(B) is not the same as "disposable income" urges a departure from the means testing formula enacted in BAPCPA. However, even *In re Hardacre*, 338 B.R. 718, 721–22 (Bankr. N.D.Tex.2006), cited in *Jass* for the proposition that "projected" has independent significance by modifying the term "disposable income", states plainly that if a debtor's annual income exceeds the median family income in her state, "then the debtor's expenses *must be determined in accordance with the means test in section*

*707(b)(2)*. 11 U.S.C. § 1325(b)(3)." (Emphasis added); *see Jass*, 340 B.R. at 416 & n. 11.

The instant case does not present issues involving changes in future income such as were suggested in *Jass*, nor changes in future expenses, but rather focuses on one specific category of current expenditures, i.e., transportation. Thus, the distinction between "projected disposable income" in § 1325(b)(1)(B) and "disposable income" in § 1325(b)(2) in terms of anticipated future income is not necessarily before this Court for decision in the instant case.

The following language of § 1325(b)(2) plainly states its intent: "For purposes of this subsection, 'disposable income' means . . . ." To understand the scope of the words "this subsection" at the beginning of § 1325(b)(2), reference is simply made to § 1325(a) which begins "Except as provided in *subsection (b)*." (Italics added). In order to give effect to all the pertinent statutory language, this Court reads "this subsection" in § 1325(b)(2) to mean all of subsection 1325(b), both § 1325(b)(1)(B) and § 1325(b)(2), and thus "disposable income" is defined at § 1325(b)(2) for purposes of determining "projected disposable income" under § 1325(b)(1)(B) to decide the disposable income test. *See, e.g., In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D.N.C.2006) ("If 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose."). This Court's construction gives effect to "disposable income" in both § 1325(b)(1)(B) and § 1325(b)(2) in the manner which avoids rendering one superfluous. *Connecticut National Bank v. Germain*, 503 U.S. at 252–54, 112 S.Ct. at 1149; *Rake v. Wade*, 508 U.S. at 471–72, 113 S.Ct. at 2192.

■■ Even *Jass*, cited by Debtors, does not permit the Debtors to avoid the means test outright, stating:

Form B22C will always be the starting point for the Court's inquiry into whether the debtor is complying with the "projected disposable income" requirement of § 1325(b)(1)(B). The Court will presume that the number resulting from Form B22C is the debtor's "projected disposable income" unless the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future.

\* \* \* \* \* \*

It is most likely that only in rare instances will the Court consider confirming chapter 13 plans where the "projected disposable income" does not conform with the calculations on Form B22C. As a general rule, Debtors should not expect the bottom line determined from Schedules I and J to trump the calculations of a properly completed Form B22C.

*Jass,* 340 B.R. at 418, 419. Notwithstanding this caution, Debtors cite *Jass* for the proposition that their Plan should be confirmed if the disposable income from Form B22C does not reflect their projected disposable income. This Court also does not agree with *Jass* that the Form B22C disposable income may be adjusted for a substantial change of circumstances. Debtors fail to satisfy their burden. This Court will apply a mechanical test. *See In re Rotunda,* 349 B.R. 324 (Bankr.N.D.N.Y. 2006); *In re Guzman,* 345 B.R. 640 (Bankr.E.D.Wis.2006); *In re Alexander,* 344 B.R. 742 (Bankr.E.D.N.C.2006) and *In re Barr,* 341 B.R. 181 (Bankr.M.D.N.C. 2006). Judge Gerling, in *Rotunda,* 349 B.R. at 329, makes a lengthy, instructive statement:

The court in *Alexander* concurred that Form B22C was the tool that was to be employed in determining projected disposable income despite the fact that it might lead to results that were not aligned with the old law. *Alexander,* 344 B.R. at 747. The court in *Alexander* noted that despite the fact that chapter 13 trustees had repeatedly made their concerns known to Congress and had asked that CMI less deductions be a minimum, not the maximum, no changes were made to the legislation. *Id.,* citing Marianne B. Culhane & Michaela M. White, *"Catching Can–Pay Debtors: Is the Means Test the Only Way?"* 13 Am. Bankr.Inst. L.Rev. 665, 681 (2005). It pointed out that it is not the role of the courts to " 'rescue Congress from its drafting errors, and to provide for what we might think… is the preferred result.' " *Id.* at 748 quoting *Lamie v. U.S. Trustee,* 540 U.S. 526, 542, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). Ultimately, the court in *Alexander* disagreed with the court in *Hardacre* and concluded that projected disposable income is based on historical data and "in order to arrive at 'projected disposable income,' one simply takes the calculation mandated by § 1325(b)(2) and does the math." *Id.* at 749. The court recognized that to veterans of chapter 13 practice, its conclusion may run "afoul of basic principles to suggest that a debtor with no disposable income can nonetheless propose a confirmable plan." *Id.* at 750. It noted that because a debtor has income not counted in the definition of current monthly income, has housing or transportation expenses less than the permissible IRS deductions, has huge secured debt for luxury items that, bizarrely, may be deducted in full as a reasonable and necessary expense, or wishes to continue to contribute to or repay a loan to her 401(k) plan rather

than pay her unsecured creditors, a debtor under the new "disposable income" test may show a zero or negative number, yet may be able to make the required showing that she actually has enough income to fund a confirmable plan.

*Barr,* 341 B.R. at 185; *see also Guzman,* 345 B.R. at 642 (indicating that "[i]f the above-median debtor's Form B22C contains enough deductions, the debtor will be entitled to obtain confirmation of a plan paying nothing to the unsecured creditors, even though the debtor's budget shows that excess funds are available").

In enacting BAPCPA, "Congress demonstrated a determination to replace judicial discretion under general standards with precise rules-based calculations. One can understand why bankruptcy judges would chafe at such restrictions, but that does not mean that Congress did not mean what it said." Culhane & White, 13 Am. Bankr.Inst. L.Rev. at 682. To allow a debtor with income above the state median to provide for zero payments to unsecured creditors in a chapter 13 plan based on the calculations on Form B22C when, according to Schedules I and J, there remains sufficient funds to pay even a minimal dividend to them, is contrary to the approach taken by this Court for over 20 years in considering chapter 13 plans. Yet, as noted by the court in *Alexander,* it is not for the Court to second guess Congress despite the fact that the statute, as written, may result in a confirmed plan that is contrary to the view expressed by President Bush that the new law would ensure that "Americans who have the ability to pay will be required to pay back at least a portion of their debts." (Press Release, April 20, 2005).

Despite the fact that the statute specifically excludes benefits received under the Social Security Act from the definition of CMI, the Trustee takes the position that when "projecting" disposable income, Schedule I should be taken into account and that Social Security benefits should be included in the payments the Debtors are to make to unsecured creditors. Under the Trustee's theory, the Debtors arguably should also be required to contribute any additional monies available after deducting their actual expenses, as listed in Schedule J, in the event that they are less than the deductions based on the IRS standards applied on Form B22C. In response, the Debtors raise the issue of how arrears on any secured debt or any priority debt are to be paid if their "projected disposable income" is based solely on the difference between the amounts on Schedules I and J since Schedule J does not include such arrears as an expense.

The Trustee argues that if one does not consider Schedules I and J to determine "projected" disposable income over the life of the plan, then Code § 1329, which allows a debtor or the trustee to seek modification of the plan post confirmation to increase or reduce the amount of payments on claims, is rendered meaningless. The Trustee also questions the need to request that a debtor file their income tax returns postpetition on an annual basis pursuant to Code § 521(f) if CMI, which is based only on the average income received over the six months prepetition, is the critical tool for determining projected disposable income over the life of the plan, i.e. it remains a static amount.

The argument that Congress intended something more when it referred to "projected" in Code § 1325(b)(1)(B) fails to address the fact that Congress defined "disposable income" *after* that

provision, in Code § 1325(b)(2). The first subsection, Code § 1325(b)(1)(B) first makes reference to "projected disposable income" and then the next subsection, specifically Code § 1325(b)(2), goes on to explain what was being "projected," namely, CMI "received by the debtor... to the extent reasonably necessary to be expended ...." It is understandable that courts would attempt to interpret the word "projected" in such a way that supports the overwhelming sense that debtors seeking a "fresh start" must make every effort to pay their unsecured creditors as much as possible during the "applicable commitment period." However, to conclude that "projected" as referenced in Code § 1325(b)(1)(B) must refer to whatever income is left after the payment of actual expenses as set forth in Schedules I and J is no more exact than using the six month average of income in the calculations on Form B22C. After all, the expenses listed in Schedule J are only estimates or "averages" as it were. One's telephone bill is never the same from month to month; nor is one's utility bill. Insurance premiums may increase, as may real property taxes. Indeed, the court is confronted on a regular basis with debtors who have defaulted on their plan payments because of unexpected changes in their financial situation whether it be a loss of job, divorce, medical emergency, unanticipated repairs to ones home or car, or simply an increase in gas or home heating costs. The expenses listed in Schedule J and the income in Schedule I are no more accurate than the estimates of disposable income on Form B22C. Thus, projecting disposable income based on an average of six months' income after certain standard deductions and payment on secured and priority debt is no less realistic than the figures used in Schedules I and J for purposes of proposing a feasible plan.

In determining whether to confirm a chapter 13 plan, it is critical to remember that a debtor is still required to propose a plan which meets the standards of good faith, as set forth in Code § 1325(a)(3), as well as the best interest of creditors test, as set forth in Code § 1325(a)(4). The Court agrees with the Trustee's assertion that CMI is simply a starting point. Code § 1323 remains a viable option for a debtor, as does Code § 1329 for a debtor or the trustee, to modify his/her plan should the need arise either before or after confirmation. The Trustee has suggested that he may start requiring the filing of yearly income tax returns by debtors. In turn, it may be appropriate for the Trustee to seek to modify the debtor's plan if the returns indicate an increase in their yearly income, exclusive of Social Security benefits, just as the debtors are entitled to modify their plan in the event that their income decreases.

*Rotunda*, 349 B.R. at 330–31.[9]

Section 1352(b)(3) imposes what a leading commentator describes as "[p]erhaps the most dramatic changes in the disposable income test" by application of the § 707(b) means test expense calculations. 8 Collier on Bankruptcy ¶ 1325.08[5][c][i] (15th ed.2006). Section 1325(b)(3) provides:

---

**9.** Judge Gerling concluded the above quoted material with the following note, with which this Court concurs: For purposes of this decision, the Court wishes to emphasize that the issue of how to calculate disposable income for purposes of modifying a plan postconfirmation pursuant to Code § 1329 is not presently before it and need not be addressed herein.

Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—

(A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(B) in the case of a debtor in a household of 2, 3, or 4, individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals; or

(C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

On their Form B22C Debtors note at Line 21 that their monthly income exceeds the applicable median family income, and their Plan proposes payments over a term of 5 years. Thus, no dispute exists that Debtors are above-median income debtors. COLLIER explains:

New section 1325(b)(3) provides that for debtors with current monthly income above the applicable state median income for their household size, reasonably necessary expenses are to be calculated using the means test formula in section 707(b)(2)(A) and (B) in order to determine payments to unsecured creditors.

COLLIERS, ¶ 1325.08[5][c][i].

■ *Barr*, 341 B.R. at 185, explains: "The use of 'shall' in section 1325(b)(3) is mandatory and leaves no discretion with respect to the expenses and deductions that are to be deducted in arriving at disposable income." The court found the language of § 1325(b)(3) unambiguous and enforced it according to its terms requiring

that the expenses of above-median income debtors be determined under § 707(b)(2)(A) and (B). *Id.*, citing *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) ("When the language of a statute is plain, the sole function of the courts is to enforce the statute according to its terms unless the disposition required by the text is absurd"); *see also Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (in turn quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917))). This Court concurs with *Barr* and *Hardacre* that, in the instant case, the above-median income Debtors' expenses must be determined in accordance with the "means test". *Accord Guzman*, 345 B.R. at 642–43.

### III. Means Test— § 707(b).

Section 707(b) provides:

(b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity

or organization (as that term is defined in section 548(d)(4)).

(2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or

(II) $10,000.

(ii) (I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 of the Family Violence Prevention and Services Act,

or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

(II) In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

(III) In addition, for a debtor eligible for chapter 13, the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.

(IV) In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, not to exceed $1,500 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a

detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

(V) In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts; divided by 60.

(iv) The debtor's expenses for payment of all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

(B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide—

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

(iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims, or $6,000, whichever is greater; or

(II) $10,000.

Of the above-quoted provisions of § 707(b), § 1325(b)(3) invokes subparagraphs 707(b)(2)(A) and (B) for determining "[a]mounts reasonably necessary to be expended under § 1325(b)(2)". Subparagraph 707(b)(2)(A) sets forth the debtors' allowable monthly expenses, as explained in *In re McGuire*, 342 B.R. 608, 612 (Bankr.W.D.Mo.2006):

[F]or above-median debtors, the statute breaks down allowable expenses into five general categories: (1) those that fit

into the IRS' National Standards, which include food, clothing, household supplies, personal care, and miscellaneous expenses; (2) those that fit into the IRS' Local Standards, which include housing and transportation; (3) actual expenses for items categorized by the IRS as "Other Necessary Expenses," including such items as taxes, mandatory payroll deductions, health care, and telecommunications services; (4) actual expenses, without limitations, for certain other expenses specified by the Bankruptcy Code, such as care for disabled family members and tuition; and (5) payments on secured and priority debts.

The pertinent Standard at issue in the instant case is the IRS Local Standard pertaining to transportation located in the IRS Financial Analysis Handbook at 5.15.1.7, ¶ 4. The U.S. House of Representatives in its committee report instructed that:

> In addition to other specified expenses [§ 707(B)(2)(A)(ii), (iii) and (iv) ], the debtor's monthly expenses—exclusive of any payments for debts unless otherwise permitted—must be the applicable monthly amounts set forth in the Internal Revenue Service Financial Analysis Handbook [pt. 5.15.1] as Necessary Expenses [pt. 5.15.1.7] under the National [pt. 5.15.1.8] and Local Standards [pt. 5.15.1.9] categories and the debtor's actual monthly expenditures for items categorized as Other Necessary Expenses [pt. 5.15.1.9].

H.R. REP.NO. 109–31, at 13–15. (2005), U.S.Code Cong. & Admin.News 2005, pp. 88, 99–102. Line 27 of Debtors' Form B22C states the IRS Local Standard for vehicle operation for the West Region, for 2 vehicles for which Debtors pay operating expenses, as $420.00 of which no dispute exists. It is instructive to refer to IRS publications for guidance under the Local Standards. The IRS Financial Analysis Handbook in discussing Local Standards provides in § 5.15.1.7, ¶ 4 that "[t]axpayers will be allowed the local standard or the amount actually paid, *whichever is less.*" (emphasis added). In contrast, "[t]he plain language of section 707(b)(2)(A)(ii)(I) provides that '[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amount specified under the Local Standards." *In re Fowler,* 349 B.R. 414, 418 (Bankr.D.Del.2006). Debtors contend that they have actual transportation expenses exceeding $600, but the IRS Local Standard limits Debtors' transportation expense to $420.00 and above-median debtors' expense deductions are governed by Form B22C, not by Schedule J. *Guzman,* 345 B.R. at 642–43; *In re Demonica,* 345 B.R. 895, 904 (Bankr. N.D.Ill.2006). Because Debtors' additional transportation expenses in the sum of $180.00 for gasoline were subtracted from their income in arriving at their plan payment of $150.00, rather than the $274.84 monthly disposable income under § 1325(b)(2) stated at Line 58 of Form B22C, the Court finds that Debtors failed their burden under § 1325(b)(1)(B) to provide that all their projected disposable income will be applied to make plan payments, and confirmation of Debtors' Plan must be denied. Debtors' argument that Form B22C called for inclusion of their additional expense claims for gasoline and charitable contribution in the form does not change the result. Such items are required to be included in the form to enable trustees to identify items of expense and review debtors' calculations.

Other provisions of § 707(b)(2)(A)(ii) specify allowed additional expenses such as an additional allowance for food and clothing, and the absence of any additional allowance for transportation expenses such as the Debtors' suggests that their transportation expenses are limited to the Local

Standard. If Congress intended for additional transportation expenses to be allowed in § 707(b)(2)(A)(ii), it would have drafted the subsection to include them in its detailed list of additional expenses.

■ A specific subsection exists allowing debtors to rebut the presumption of abuse "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative....," (§ 707(b)(2)(B), provided the presumption of abuse is rebutted if the additional expenses cause the product of the debtor's current monthly income when multiplied by 60 to be less than the distinct trigger points of § 707(b)(2)(B)(iv)). This subsection is applicable in determining amounts reasonably necessary to be expended by the plain language of § 1325(b)(3), and so the Court will apply that test to the Debtors' $180 in additional transportation expense.

This Court declines to adopt the separate and parallel analysis described in *Jass*, where the court presumed the number from Form B22C is the debtor's " 'projected disposable income' unless the debtor can show that a substantial change in circumstances has occurred such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future." *Jass*, 340 B.R. at 418. The court in *Jass* acknowledged that § 707(b)(2)(B) allows a debtor to rebut the presumption of abuse where the debtor can demonstrate special circumstances, which the court described as "similar to the Court's inquiry into whether a

substantial change in circumstances exists." *Jass*, 340 B.R. at 418. The court also stated that it will look to the analysis required by § 707(b)(2)(B) for guidance whether a debtor has met his or her burden to show a substantial change in circumstances, and that a debtor attempting to meet that burden should present documentation similar to that required by § 707(b)(2)(B). This Court finds no statutory authorization for the *Jass* court's "substantial change in circumstances" exception to the means test, and declines to adopt that separate test.[10]

In considering special circumstances, this Court looks directly to § 707(b)(2)(B), as specifically authorized by § 1325(b)(3), requiring itemized documentation of expenses and a detained explanation of the "special circumstances" that justify the additional expenses for which there is no reasonable alternative. *Demonica*, 345 B.R. at 903. This Court concurs with *Jass* that debtors should not expect the bottom line determined from Schedules I and J to trump the calculations of Form B22C. *See Jass*, 340 B.R. at 419.

The Court concludes that Debtors' evidence of special circumstances falls well short of satisfying § 707(b)(2)(B) such as serious medical condition or call to active duty. *In re Johns*, 342 B.R. 626, 629 (Bankr.E.D.Okla.2006) (potential for zero payment plan not a special circumstance under § 707(b)(2)(B)). Debtors contend that their $600 transportation expense is necessary for them to commute to their employment in Dutton and Great Falls, without which they cannot fund their Plan. COLLIER suggests that high commuting costs and the increased price of gas are among many possibilities. 6 COLLIER ON

---

**10.** The record in the instant case would not satisfy the *Jass* court's "substantial change in circumstances" test. Debtors offered no evidence showing a change in circumstances, and argued on the contrary that they could not reduce or avoid their $600 monthly transportation expense.

BANKRUPTCY ¶ 707.05[2][d] (15th ed.2005). However, COLLIER also suggests that courts have "a good deal of discretion to temper the arbitrariness of the means test numbers." COLLIER, ¶ 707.05[2][d]. This Court concludes that the Debtors failed to satisfy the element of showing that no reasonable alternative exists.

 Debtors live in Brady, Pondera County, Montana, which is located north of Dutton where Thomas works. Dutton in turn lies north of Great Falls where Sheri works, and all 3 locations are located along Interstate 15. Debtors contend that they must commute to Dutton and Great Falls to work, but they failed to show why they could not reduce or eliminate their commutes by relocating their residence. Section 707(b)(2)(B)'s "special circumstances" contemplates circumstances beyond a debtor's reasonable control, such as a "serious medical condition, or a call or order to active duty in the Armed Forces". In this Court's view, "special circumstances" does not include debtor's desire to remain living wherever they choose, even when their place of employment changes or requires a long commute. No detailed explanation exists in the record, as required by § 707(b)(2)(B), showing why the Debtors cannot relocate and why their $600 monthly transportation expense is necessary and reasonable and that no reasonable alternative exists. *See, e.g., In re Renicker,* 342 B.R. 304, 310 (Bankr.W.D.Mo.2006) (no showing that no reasonable alternative exists to the extraordinary transportation and other expenses).

Thomas testified that he was transferred from Brady schools to Dutton for his current employment, a round trip of 30 miles per day, and that Sheri commutes 100 miles per day from Brady to Great Falls.

Both of their children have moved out. If the Debtors moved to either Dutton, where Thomas works, or Great Falls, one of their long distance commutes would be eliminated, and the expense of the other commute could be ameliorated by driving a vehicle that gets higher mileage. Debtors' Schedule B shows they own 4 vehicles, but Thomas drives a 1970 Ford pickup, which he admits gets lower mileage than Sheri's Monte Carlo, 30 miles each day to Dutton. Other alternatives to long distance commuting, such as car pooling or public transportation, may be available depending on whether and to where Debtors relocated [11], but Debtors' failure to address why no reasonable alternative exists to their $600 transportation expense means that Debtors failed to satisfy their burden of proof under § 707(b)(2)(B).

As a result of Debtors' Plan failing to provide for payments in accordance with Form B22C, and failing to satisfy the test under § 707(b)(2)(B) to show special circumstances to justify additional expenses, confirmation of Debtors' Plan must be denied for failure to satisfy the "disposable income" test under § 1325(b)(1)(B), as determined by reference to §§ 1325(b)(2) and (b)(3) and § 707(b)(2)(A)(ii). Debtors argue that they cannot make the payments required under Form B22C and the case will be dismissed and they will be deprived of a fresh start if the Court requires the Form B22C disposable income figure. Based on this admission the Court could order this case dismissed immediately. However, the Court will allow the Debtors a period of twenty (20) days to evaluate their situation and this memorandum, and if they choose to file an amended Plan.

---

11. It is unlikely that public transportation exists to commute from Dutton to Great Falls, or vice versa, but there may well be car pooling and the failure to address alternatives weighs against Debtors.

#### IV. Charitable Contribution Under BAPCPA.

Trustee objects to Debtors' $15 monthly charitable contributions. The Court notes that the Trustee filed a Report on August 31, 2006, and attached a Memorandum–Decision and Order in the case of *In re Diagostino*, 347 B.R. 116 (Bankr.N.D.N.Y. 2006). Debtors have not requested leave to file a reply to the Trustee's Report and *Diagostino*. BAPCPA significantly revised § 1325(b). Section 1325(b)(3) requires, for above-median income debtors, application of the means test of § 707(b)(2)(A) and (B), which do not mention charitable contributions among their detailed list of expenses, and does not incorporate § 1325(b)(2)(A) and (B). Finally, the Court notes the legislative history cited in *Diagostino* suggesting that the revision to § 1325(b)(2) for above-median income debtors was intentional, and that Congress did not incorporate Senator Russ Feingold's (D–Wisconsin) proposed amendment to include the charitable contribution provision of § 1325(b)(2)(A)(i) in determining amounts reasonably necessary to be expended under § 1325(b)(3). This Court will follow the *Diagostino* reasoning.

■ The court in *Diagostino* concluded that the failure to include a provision for charitable contributions in § 1325(b)(3) "effectively closes the door for debtors who are above the median income from deducting charitable contributions as an expense unless they can establish the contributions fall under the IRS guidelines." *Diagostino*, 347 B.R. at 119–20. The court declined to follow *Drummond v. Cavanagh (In re Cavanagh)*, 250 B.R. 107, 110–11 (9th Cir. BAP 2000), a case originating in this Court, since *Cavanagh* is a pre-BAPCPA case decided after enactment of the Religious Liberty and Charitable Donation Protection Act of 1998. *Diagostino*, 347 B.R. at 117. *Cavanagh* would still apply to below-median income debtors because the provisions of 11 U.S.C. § 1325(b)(2)(A) and (B) would still apply.

■ As § 707(b)(2)(A)(ii)(I) applies, the Court looks to the categories specified as Other Necessary Expenses located in the IRS Financial Analysis Handbook located at 5.15.1.10, and finds an allowed expense for charitable contributions if they are a condition of employment or meets the necessary expense tests. The evidence admitted in the instant case currently shows that Debtors' $15.00 monthly charitable contribution to school groups is not necessary for Thomas' employment, but rather is based on the students' expectations. The Court disallows Debtors' charitable contribution expense.

### CONCLUSIONS OF LAW

1. This Court has original jurisdiction in this Chapter 13 case pursuant to 28 U.S.C. § 1334(a).

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) involving confirmation of a plan.

3. The Debtors failed their burden of proof to show that the "disposable income" requirement of 11 U.S.C. § 1325(b)(1)(B) has been satisfied after application of §§ 1325(b)(2), 1325(b)(3), and §§ 707(b)(2)(A) and (B).

**IT IS ORDERED** a separate Order shall be entered in accordance with the above sustaining the Chapter Trustee's "disposable income" objection, denying confirmation of Debtors' Chapter 13 Plan filed May 22, 2006; and granting the Debtors twenty (20) days to file an amended Chapter 13 Plan and to consider whether they wish through the confirmation process to provided additional evidence on the

gas expense and whether it arises from special circumstances.