### In re HOWARD E. TUSS, Debtor.

#### No. 06–60508–13.

United States Bankruptcy Court,
D. Montana.

Jan. 5, 2007.

Gary S. Deschenes, Great Falls, MT, for Debtor.

### MEMORANDUM OF DECISION

RALPH B. KIRSCHER, Bankruptcy Judge.

Pending in this Chapter 13 bankruptcy is confirmation of Debtor's Chapter 13 Plan and the Trustee's objections thereto based upon the "disposable income" test of 11 U.S.C. § 1325(b)(1)(B) and, by reference, 11 U.S.C. § 707(b)(2). The Trustee objects that Debtor's food, clothing and personal care expenses exceed the local standards issued by the United States Internal Revenue Service ("IRS"), while the Debtor contends that the IRS standards are merely guidelines and not iron clad or binding, and that his $261.85 in addition food/clothing/personal care expenses are needed for his health, welfare and production of income. After due notice a second hearing on confirmation was held at Great Falls on September 28, 2006. The Debtor Howard E. Tuss ("Tuss" or "Debtor") appeared and testified at the hearing represented by attorney Gary S. Deschenes ("Deschenes") of Great Falls, Montana. The Chapter 13 Trustee Robert G. Drummond, of Great Falls, Montana, appeared. Debtor's Exhibits ("Ex.") 1 through 13, consisting of Debtor's monthly food and prescription receipts from March through September of 2006, were admitted into evidence by stipulation. Based on the admissions by Debtor's counsel of a mathematical error and the "applicable commitment period" in the Debtor's Plan required under § 1325(b)(1)(B) as defined at § 1325(b)(4), the Court denied confirmation of Debtor's amended Plan, but heard evidence of Tuss's additional food, clothing and personal care of approximately $261.85 per month incurred while working out of state. At the conclusion of the parties' cases-in-chief the Court granted the parties time to file simultaneous briefs on whether Debtor may deduct the additional $261.85 per month, which have been filed and reviewed by the Court, together with the record and applicable law. This matter is ready for decision. For the reasons set forth below the Trustee's "disposable

income" objection to confirmation will be sustained by separate Order.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) involving confirmation of a plan. At issue is whether the Debtor's Chapter 13 Plan satisfies the "disposable income" requirement of § 1325(b)(1)(B) when his food, clothing and personal care expenses exceed by $261.85 the amount allowed debtors under IRS Standards which are applicable pursuant to § 1325(b)(3) and § 707(b)(2)(A)(ii). This Memorandum includes the Court's findings of fact and conclusions of law.

## FACTS

Howard Tuss is single and lives in Grass Range, Montana. He has no dependents. He testified that he is borderline diabetic, on medication, and that he is supposed to but does not follow a health and dietary plan to lower his cholesterol. Tuss is employed as a heavy equipment operator by Weeden Construction LLC ("Weeden Construction") of Lewistown, Montana. He testified that his work is seasonal[1] or dependent on availability of work, and that he often works in-state but for the last 6 months he was employed by Weeden out of state in Riverton, Wyoming, on a job which lasted until November 8, 2006[2]. He testified that last year he earned $53,122 from Weeden, and earned $43,848 the year before.

Weeden does not reimburse Tuss for his food and personal expenses while he works out of town. He testified that his food and personal expenses when he is working in Riverton are higher than at home, because at Riverton he works until about 7 p.m. then goes out to eat before working on his paperwork. Tuss testified that in past

years he deducted his food expenses and mileage on his tax returns because they totaled more than the standard deduction, but that for the past 2 years they totaled less than the standard deduction.

Tuss filed a voluntary Chapter 13 petition on June 29, 2006, together with his Schedules, Statement of Financial Affairs and Form B22C "Statement of Currently Monthly Income and Calculation of Commitment Period and Disposable Income". On his original Form B22C, which Tuss signed under penalty of perjury, Tuss checked the box next to "The applicable commitment period if 5 years" and the box next to "Disposable income is determined under § 1325(b)(3)". At line 24, "National Standards: food, clothing, household supplies, personal care, and miscellaneous" derived from the IRS National Standards Tuss entered $691.00. At line 27 Tuss entered $305.00 as vehicle operation expense for 1 vehicle. Line 38 lists total expenses allowed under IRS Standards in the amount of $3,105.84. The monthly disposable income at line 58 is stated in the amount of $507.82. Part VI calling for additional expenses required for the health and welfare of debtor and debtor's family is stated as $0.

Tuss's Schedule I lists his current net monthly income as $3,104.33 from his employment as heavy equipment operator for Weeden, with no anticipated increase stated. His Original Schedule J lists total monthly expenses in the amount of $2,670.75, leaving monthly net income after expenses in the amount of $433.58. Schedule J lists monthly food expense in the amount of $500.00, clothing at $100.00, laundry and dry cleaning at $60.00, medical and dental expenses at $87.50, trans-

---

1. Tuss testified that when not employed he draws on unemployment because he is on "job attached" status.

2. Tuss testified that in Wyoming he works a schedule of 10 days on, 4 days off.

portation at $300.00, recreation and entertainment at $50.00, and personal care/household items at $100.00

Tuss filed his Chapter 13 Plan on July 13, 2006. Despite his statements of disposable income on Form B22C and Schedules I and J, Tuss's original Plan proposed monthly payments in the amount of $50.00 for only 36 months. The Chapter 13 Trustee objected to confirmation based on the disposable income requirement of § 1325(b)(1)(B) and Debtor's Form B22C showing disposable income of $507.82 [3]. Shortly thereafter Debtor filed an amended Schedule J raising his monthly expenditures to $3,060.75, including raising food expenses to $700, laundry and dry cleaning raised to $100, transportation to $400, and recreation and entertainment to $100, leaving a monthly net income in the sum of $43.58.

Tuss testified that he amended his original Schedule J because it did not show all his expenditures, which happened because he did not provide his attorney with all the proof of his out of town expenses, and his receipts did not total what his actual expenses had been. He testified that the $700 food expense was mostly for eating out, but included other health-related items besides food. At line 19 of his amended Schedule J Debtor wrote:

> The higher expenses for food, laundry, transportation, and recreation are due to the Debtor working out of town on construction jobs for 3–4 weeks at a time. The company puts them up in a motel room, but he is responsible for his own meals and transportation to and from the job site while he is working on a job.

Tuss testified that he computed the $500 food expense on his original Schedule J while working at home, where he testified that he eats less and his food expense is less than when he eats out while working out of town. Tuss explained that he and two of his co-workers go out to eat together when they are working in Riverton, and that they alternate paying the bill for all 3 with the burden averaging out between them over time. Ex. 1 through 13 are copies of receipts from Safeway, Albertsons/Osco, Walmart, various restaurants and drive-ins [4] dated from March 2006, to September 2006 for food, groceries, over-the-counter drugs and prescriptions. Tuss admitted that he did not keep all his fast food and prescription receipts because of neglect.

At a hearing held on August 16, 2006, the parties suggested that they file a stipulation of facts and issues and simultaneous briefs. The Court granted the parties until September 5, 2006, to file stipulated facts and issues, but the parties were unable to finalize stipulated facts. Instead Debtor filed an amended Form B22C on August 21, 2006.

Debtor's amended Form B22C did not increase his food expense at line 24, but increased Tuss's transportation operating expense at line 27 from 1 vehicle and $305 to 2 or more vehicles and $399. At line 31, Tuss increased his mandatory payroll deductions from $0 to $109. These resulted in an entry at line 38 for total expenses allowed under IRS standards in the amount of $3,308.84, up from $3,105.84. At lines 44 and 46 of Subpart B, Tuss increased the entry for additional food and clothing expense which exceed the IRS

---

3. The Trustee also objected on the grounds of the "best interest of creditors" test at 11 U.S.C. § 1325(a)(4). The Trustee's original objection does not raise the 36 month plan term.

4. Receipts include franchises such as JB's, KFC, McDonald's, Burger King, Golden Corral, Pizza Hut, and local restaurants.

National Standards under § 707(b) from $0 to $34.55. At Subpart C, Tuss reduced his deductions for debt payment on his residence and pickup truck from $719.67 to $547.90. The result at Subpart D increased Debtor's claimed total deductions allowed under § 707(b)(2) at line 52 from $3,825.51 to $3,891.29, with the resulting monthly disposable income at line 58 reduced from $507.82 in the original Form B22C to $442.04. Next, at Part VI, "Additional Expense Claims", line 59 calling for "Other Expenses" with the following instructions:

List and describe any monthly expense, not otherwise stated in this form, that are required for the health and welfare of you and your family that you contend should be an additional deduction from your currently monthly income under § 707(b)(2)(A)(ii)(I). If necessary, list additional sources on a separate page. All figures should reflect your average monthly expense for each item. Total the expenses.

Tuss increased the $0 entered in his original B22C line 59 to $274.45 described as "Additional Food/Clothing/Personal Care". Tuss testified that he assumes the $274.45 includes some medicines based on his receipts admitted as Ex. 1 through 13, but he admitted that his exhibits do not include all his expenses or receipts.

Debtor filed an amended Chapter 13 Plan on September 6, 2006, again providing for a 3–year term but increasing the monthly payment to $115. The Court denied confirmation of Debtor's original Plan by Order entered September 12, 2006, but authorized the Debtor to present evidence of other expenses. The Trustee filed objections to confirmation of Debtor's amended Plan on September 20, 2006, on the grounds Debtor fails to commit 100% of his disposable income.

On September 27, 2006, the day before trial, Debtor filed a third Form B22C. Tuss made minor adjustments [5] at Part IV, Subpart A, resulting in an increase at line 38 of the total expenses allowed under IRS standards from $3,308.84 to $3,362.84. Lines 44 and 46 increased additional food and clothing expense from $34.55 to $35.15. Total deductions at line 52 increased from $3,891.29 to $3,960.89, which reduced Debtor's monthly disposable income at line 58 from $442.04 to $372.44. Tuss reduced his additional expense claim for food/clothing/personal care at line 59, Part VI, from $274.45 to $261.85, but he testified that he is not sure why that entry changed.

Tuss testified that the bottom line is that he has had to spend $700 per month on food and personal care items while working away from home, and that those costs are necessary for his income from continued employment, health and welfare. Tuss admitted that if he was not working in Riverton and was at home he would not be incurring as much food expense, but he testified that in that event he would not be producing income. He also testified that after his current project is completed, which is scheduled to end on November 8, 2006, he has no certain work lined up and does not know how he could make plan payments afterward.

## DISCUSSION

### I. Contentions of the Parties.

The Trustee objected to confirmation of Debtor's amended Plan because the pro-

---

**5.** Line 24, National Standards for food, clothing, household supplies, personal care and miscellaneous increased from $691 to $703. Line 25A, Local Standards for housing and utilities, non-mortgage expenses increased from $324 to $330; Line 25B increased from $62.78 to $81.78. Line 27, Local Standards for vehicle operation, increased from $399 to $420, while vehicle ownership expense decreased at Line 28 from $201 to $197.

posed 36 month term does not meet the applicable commitment period of § 1325(b), and because the calculation of disposable income pursuant to § 1325(b) and 11 U.S.C. § 707(b)(2) is a rigid formula, not discretionary, which does not allow debtors to exceed the IRS local standards for food and clothing based upon debtors' actual expenses shown by Schedule J. Thus, the Trustee argues that the Debtor should not be allowed the additional $261.85 expenditure for food, clothing and personal care at line 59 of his third Form B22C. The Trustee contends that Debtor's numerous amendments to Form B22C and Schedule J casts doubt on his claimed expenditures, which are not all accounted for in Ex. 1 through 13.

The Debtor argues that his additional $261.85 in food, clothing and personal care expenses are necessary for his employment and production of income, health and welfare and can offset the mandatory amounts under the means test, which Debtor argues is "merely a guideline, not an iron clad rule", or Schedule I and J would be unnecessary. Debtor refers to, without specification, the debtors' arguments contained in *In re Tranmer*,[6], 355 B.R. 234 (Bankr.D.Mont.2006).

## II. § 1325(b)—"Disposable Income".

■ It is well established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 *must be present* and the debtor has the burden of proving that each element has been met." *In re Barnes*, 32 F.3d 405, 407 (9th Cir.1994); *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir.1995); *Chinichian v. Campolongo*, 784 F.2d 1440, 1443–44 (9th Cir.1986) (citing *In re Elkind*,

11 B.R. 473, 476 (Bankr.D.Colo.1981)) (emphasis added).

The Trustee's objection raises the issue of the "disposable income" test under § 1325(b)(1)(B) which provides:

> (b)(1) If the trustee ... objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> \*   \*   \*   \*   \*   \*
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to made payments under the plan.

*See In re Sutton*, 19 Mont. B.R. 220, 227–28 (Bankr.D.Mont.2001) (construing § 1325(b)(1)(B) prior to 2005 revisions).

At the hearing the Court denied confirmation of Debtor's amended Plan based on Debtor's counsel's admission that the 3-year plan term fails to satisfy the applicable commitment period for Tuss, which is without dispute 5 years under § 1325(b)(4) because he is an above median income debtor. Notwithstanding, the Court will undertake to address the remaining issue involving Debtor's claim for $261.85 in additional food/clothing/personal care expense.

"Disposable income," as defined at § 1325(b)(2), underwent substantial revision in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub.L.109–8) ("BAPCPA"). BAPCPA became effective for purposes of the instant case on October 17, 2005. Section 1325(b)(2) now provides, in pertinent part:

---

**6.** The Memorandum of Decision entered in *Tranmer* on November 16, 2006 (Docket No. 29) and Order (Docket No. 30) sustained the Trustee's objections based on disposable income and denied confirmation. The issues in the instant case are not identical to the issues in *Tranmer,* including the issue of charitable contribution.

For purposes of this subsection, "disposable income" means current monthly income [7] received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

    (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

    (ii) for charitable contributions (that meet the definition of "Charitable contribution") under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and

    (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

■■■ In *Tranmer*, the debtors cited *In re Jass*, 340 B.R. 411 (Bankr.D.Utah 2006) for the proposition that "disposable income" as defined by § 1325(b)(2) is not the same as "projected disposable income" required under § 1325(b)(1)(B). This Court found that argument unpersuasive in *Tranmer* in several respects. First, courts should disfavor interpretations of statutes that render statutory language superfluous, and so long as no positive repugnancy between two laws exist, a court must give effect to both. *Connecticut National Bank v. Germain*, 503 U.S. 249, 252–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). Courts generally avoid construing one provision in a statute so as to suspend or supersede another provision. *Rake v. Wade*, 508 U.S. 464, 471–72, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993).

Tranmers' argument that "projected disposable income" in § 1325(b)(1)(B) is not the same as "disposable income" urged a departure from the means testing formula enacted in BAPCPA. However, even *In re Hardacre*, 338 B.R. 718, 721–22 (Bankr. N.D.Tex.2006), cited in *Jass* for the proposition that "projected" has independent significance by modifying the term "disposable income", states plainly that if a debtor's annual income exceeds the median family income in her state, "then the debtor's expenses *must be determined in accordance with the means test in section 707(b)(2)*. 11 U.S.C. § 1325(b)(3)." (Emphasis added); *see Jass*, 340 B.R. at 416 & n. 11.

Like *Tranmer*, the instant case does not present issues involving changes in future income such as were suggested in *Jass*, nor changes in future expenses, but rather focuses on one specific category of current expenditures, i.e., food/clothing/personal care. Thus, the distinction between "projected disposable income" in § 1325(b)(1)(B) and "disposable income" in § 1325(b)(2) in terms of anticipated future income is not before this Court for decision in the instant case.

The following language of § 1325(b)(2) plainly states its intent: "For purposes of this subsection, 'disposable income' means...." To understand the scope of the words "this subsection" at the beginning of § 1325(b)(2), reference is simply made to § 1325(a) which begins "Except as provided in *subsection (b)*." (Emphasis added). In order to give effect to all the pertinent statutory language, this Court reads "this subsection" in § 1325(b)(2) to

---

**7.** "Current monthly income" is defined at 11      U.S.C. § 101(10A)

mean all of subsection 1325(b), both § 1325(b)(1)(B) and § 1325(b)(2), and thus "disposable income" is defined at § 1325(b)(2) for purposes of determining "projected disposable income" under § 1325(b)(1)(B) to decide the disposable income test. *See e.g., In re Alexander,* 344 B.R. 742, 749 (Bankr.E.D.N.C.2006) ("If 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose."). This Court's construction gives effect to "disposable income" in both § 1325(b)(1)(B) and § 1325(b)(2) in the manner which avoids rendering one superfluous. *Connecticut National Bank v. Germain,* 503 U.S. at 252–54, 112 S.Ct. at 1149; *Rake v. Wade,* 508 U.S. at 471–72, 113 S.Ct. at 2192.

■ Even *Jass,* cited by debtors in *Tranmer* and by reference by Tuss, does not permit the Debtor to avoid the means test outright, stating:

> Form B22C will always be the starting point for the Court's inquiry into whether the debtor is complying with the "projected disposable income" requirement of § 1325(b)(1)(B). The Court will presume that the number resulting from Form B22C is the debtor's "projected disposable income" unless the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future.
>
> *       *       *       *       *       *

It is most likely that only in rare instances will the Court consider confirming chapter 13 plans where the "projected disposable income" does not conform with the calculations on Form B22C. As a general rule, Debtors should not expect the bottom line determined from Schedules I and J to trump the calculations of a properly completed Form B22C.

*Jass,* 340 B.R. at 418, 419. Notwithstanding this caution, debtors in *Tranmer* cited *Jass* for the proposition that their plan should be confirmed if the disposable income from Form B22C did not reflect their projected disposable income. This Court did not agree with *Jass* that the Form B22C disposable income may be adjusted for a substantial change of circumstances. *Tranmer,* 355 B.R. at 243–44. As in *Tranmer,* this Court will apply a mechanical test in which its discretion to determine the reasonableness of a debtor's expenses in calculating disposable income has been curtailed by BAPCPA. *See In re Rotunda,* 349 B.R. 324, 328–29, 332 (Bankr.N.D.N.Y.2006); *In re Guzman,* 345 B.R. 640 (Bankr.E.D.Wis.2006); *In re Alexander,* 344 B.R. 742 (Bankr.E.D.N.C. 2006) and *In re Barr,* 341 B.R. 181 (Bankr. M.D.N.C.2006). Judge Gerling, in *Rotunda,* 349 B.R. at 329–331, makes a lengthy, instructive statement:

> The court in *Alexander* concurred that Form B22C was the tool that was to be employed in determining projected disposable income despite the fact that it might lead to results that were not aligned with the old law. *Alexander,* 344 B.R. at 747. The court in *Alexander* noted that despite the fact that chapter 13 trustees had repeatedly made their concerns known to Congress and had asked that CMI less deductions be a minimum, not the maximum, no changes were made to the legislation. *Id.,* citing Marianne B. Culhane & Michaela M. White, *"Catching Can–Pay Debtors: Is the Means Test the Only Way?"* 13 Am. Bankr.Inst. L.Rev. 665, 681 (2005). It pointed out that it is not the role of the courts to " 'rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.' " *Id.* at 748 quoting *Lamie v.*

*U.S. Trustee*, 540 U.S. 526, 542, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). Ultimately, the court in *Alexander* disagreed with the court in *Hardacre* and concluded that projected disposable income is based on historical data and "in order to arrive at 'projected disposable income,' one simply takes the calculation mandated by § 1325(b)(2) and does the math." *Id.* at 749. The court recognized that to veterans of chapter 13 practice, its conclusion may run "afoul of basic principles to suggest that a debtor with no disposable income can nonetheless propose a confirmable plan." *Id.* at 750. It noted that

> because a debtor has income not counted in the definition of current monthly income, has housing or transportation expenses less than the permissible IRS deductions, has huge secured debt for luxury items that, bizarrely, may be deducted in full as a reasonable and necessary expense, or wishes to continue to contribute to or repay a loan to her 401(k) plan rather than pay her unsecured creditors, a debtor under the new "disposable income" test may show a zero or negative number, yet may be able to make the required showing that she actually has enough income to fund a confirmable plan.

*Id.; see also Guzman*, 345 B.R. at 642 (indicating that "[i]f the above-median debtor's Form B22C contains enough deductions, the debtor will be entitled to obtain confirmation of a plan paying nothing to the unsecured creditors, even though the debtor's budget shows that excess funds are available").

In enacting BAPCPA, "Congress demonstrated a determination to replace judicial discretion under general standards with precise rules-based calculations. One can understand why bankruptcy judges would chafe at such

restrictions, but that does not mean that Congress did not mean what it said." Culhane & White, 13 Am. Bankr.Inst. L.Rev. at 682. To allow a debtor with income above the state median to provide for zero payments to unsecured creditors in a chapter 13 plan based on the calculations on Form B22C when, according to Schedules I and J, there remains sufficient funds to pay even a minimal dividend to them, is contrary to the approach taken by this Court for over 20 years in considering chapter 13 plans. Yet, as noted by the court in *Alexander*, it is not for the Court to second guess Congress despite the fact that the statute, as written, may result in a confirmed plan that is contrary to the view expressed by President Bush that the new law would ensure that "Americans who have the ability to pay will be required to pay back at least a portion of their debts." (Press Release, April 20, 2005).

\*    \*    \*    \*    \*    \*

Despite the fact that the statute specifically excludes benefits received under the Social Security Act from the definition of CMI, the Trustee takes the position that when "projecting" disposable income, Schedule I should be taken into account and that Social Security benefits should be included in the payments the Debtors are to make to unsecured creditors. Under the Trustee's theory, the Debtors arguably should also be required to contribute any additional monies available after deducting their actual expenses, as listed in Schedule J, in the event that they are less than the deductions based on the IRS standards applied on Form B22C. In response, the Debtors raise the issue of how arrears on any secured debt or any priority debt are to be paid if their "projected dispos-

able income" is based solely on the difference between the amounts on Schedules I and J since Schedule J does not include such arrears as an expense.

The Trustee argues that if one does not consider Schedules I and J to determine "projected" disposable income over the life of the plan, then Code § 1329, which allows a debtor or the trustee to seek modification of the plan post confirmation to increase or reduce the amount of payments on claims, is rendered meaningless. The Trustee also questions the need to request that a debtor file their income tax returns postpetition on an annual basis pursuant to Code § 521(f) if CMI, which is based only on the average income received over the six months prepetition, is the critical tool for determining projected disposable income over the life of the plan, i.e. it remains a static amount.

The argument that Congress intended something more when it referred to "projected" in Code § 1325(b)(1)(B) fails to address the fact that Congress defined "disposable income" *after* that provision, in Code § 1325(b)(2). The first subsection, Code § 1325(b)(1)(B) first makes reference to "projected disposable income" and then the next subsection, specifically Code § 1325(b)(2), goes on to explain what was being "projected," namely, CMI "received by the debtor . . . to the extent reasonably necessary to be expended. . . ." It is understandable that courts would attempt to interpret the word "projected" in such a way that supports the overwhelming sense that debtors seeking a "fresh start" must make every effort to pay their unsecured creditors as much as possible during the "applicable commitment period." However, to conclude that "projected" as referenced in Code § 1325(b)(1)(B) must refer to whatever income is left after the pay-

ment of actual expenses as set forth in Schedules I and J is no more exact than using the six month average of income in the calculations on Form B22C. After all, the expenses listed in Schedule J are only estimates or "averages" as it were. One's telephone bill is never the same from month to month; nor is one's utility bill. Insurance premiums may increase, as may real property taxes. Indeed, the court is confronted on a regular basis with debtors who have defaulted on their plan payments because of unexpected changes in their financial situation whether it be a loss of job, divorce, medical emergency, unanticipated repairs to ones home or car, or simply an increase in gas or home heating costs. The expenses listed in Schedule J and the income in Schedule I are no more accurate than the estimates of disposable income on Form B22C. Thus, projecting disposable income based on an average of six months' income after certain standard deductions and payment on secured and priority debt is no less realistic than the figures used in Schedules I and J for purposes of proposing a feasible plan.

In determining whether to confirm a chapter 13 plan, it is critical to remember that a debtor is still required to propose a plan which meets the standards of good faith, as set forth in Code § 1325(a)(3), as well as the best interest of creditors test, as set forth in Code § 1325(a)(4). The Court agrees with the Trustee's assertion that CMI is simply a starting point. Code § 1323 remains a viable option for a debtor, as does Code § 1329 for a debtor or the trustee, to modify his/her plan should the need arise either before or after confirmation. The Trustee has suggested that he may start requiring the filing of yearly in-

come tax returns by debtors. In turn, it may be appropriate for the Trustee to seek to modify the debtor's plan if the returns indicate an increase in their yearly income, exclusive of Social Security benefits, just as the debtors are entitled to modify their plan in the event that their income decreases.

*Rotunda,* 349 B.R. at 330–31.[8]

Section 1352(b)(3) imposes what a leading commentator describes as "[p]erhaps the most dramatic changes in the disposable income test" by application of the § 707(b) means test expense calculations. 8 COLLIER ON BANKRUPTCY ¶ 1325.08[5][c][i] (15th ed.2006). Section 1325(b)(3) provides:

> Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—
>
> (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>
> (B) in the case of a debtor in a household of 2, 3, or 4, individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals; or
>
> (C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

On all 3 of his Form B22Cs, Tuss noted at the beginning that the applicable commitment period is 5 years, but both his plans provided for a 36–month term. No dispute exists that Tuss is an above-median income debtor. COLLIER explains:

> New section 1325(b)(3) provides that for debtors with current monthly income above the applicable state median income for their household size, reasonably necessary expenses are to be calculated using the means test formula in section 707(b)(2)(A) and (B) in order to determine payments to unsecured creditors.

COLLIERS, ¶ 1325.08[5][c][i].

■ *Barr,* 341 B.R. at 185, explains: "The use of 'shall' in section 1325(b)(3) is mandatory and leaves no discretion with respect to the expenses and deductions that are to be deducted in arriving at disposable income." The court found the language of § 1325(b)(3) unambiguous and enforced it according to its terms requiring that the expenses of above-median income debtors be determined under § 707(b)(2)(A) and (B). *Id.,* citing *Lamie v. U.S. Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) ("When the language of a statute is plain, the sole function of the courts is to enforce the statute according to its terms unless the disposition required by the text is absurd"); *see also Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (in turn quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917))). This Court concurs with *Barr* and *Hardacre* that, in the instant case, the

---

**8.** Judge Gerling concluded the above quoted material with the following note, with which this Court concurs: For purposes of this decision, the Court wishes to emphasize that the issue of how to calculate disposable income for purposes of modifying a plan postconfirmation pursuant to Code § 1329 is not presently before it and need not be addressed herein.

above-median income Debtor's expenses must be determined in accordance with the "means test". *Accord Guzman*, 345 B.R. at 642–43.

### III.   Means Test— § 707(b).

■   Section 707(b) provides:

(b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

(2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater;  or

(II) $10,000.

(ii) (I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 of the Family Violence Prevention and Services Act, or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

(II) In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

(III) In addition, for a debtor eligible for chapter 13, the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.

(IV) In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, not to exceed $1,500 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

(V) In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

(iv) The debtor's expenses for payment of all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

(B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide—

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

(iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims, or $6,000, whichever is greater; or

(II) $10,000.

Of the above-quoted provisions of § 707(b), § 1325(b)(3) invokes subparagraphs 707(b)(2)(A) and (B) for determining "[a]mounts reasonably necessary to be expended under § 1325(b)(2)". Subparagraph 707(b)(2)(A) sets forth debtors' allowable monthly expenses, as explained in *In re McGuire*, 342 B.R. 608, 612 (Bankr. W.D.Mo.2006):

[F]or above-median debtors, the statute breaks down allowable expenses into five general categories: (1) those that fit into the IRS' National Standards, which include food, clothing, household supplies, personal care, and miscellaneous expenses; (2) those that fit into the IRS' Local Standards, which include housing and transportation; (3) actual expenses for items categorized by the IRS as "Other Necessary Expenses," including such items as taxes, mandatory payroll deductions, health care, and telecommunications services; (4) actual expenses, without limitations, for certain other expenses specified by the Bankruptcy Code, such as care for disabled family members and tuition; and (5) payments on secured and priority debts.

The pertinent provision at issue in the instant case is that portion of § 707(b)(2)(A)(ii)(I) which provides that, in addition to debtor's monthly expense amounts specified under IRS National and Local Standards, "the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the [IRS] for the area in which the debtor resides". These Other Necessary pertaining to transportation located in the IRS Financial Analysis Handbook at 5.15.1.10, which allows other expenses to be considered "if they meet the necessary expense test—they must provide for the health and welfare of the taxpayer … or they must be for the production of income." ¶ 1. The U.S. House of Representatives in its committee report instructed that:

In addition to other specified expenses [§ 707(B)(2)(A)(ii), (iii) and (iv)], the debtor's monthly expenses—exclusive of any payments for debts unless otherwise permitted—must be the applicable monthly amounts set forth in the Internal Revenue Service Financial Analysis Handbook [pt. 5.15.1] as Necessary Expenses [pt. 5.15.1.7] under the National [pt. 5.15.1.8] and Local Standards [pt. 5.15.1.9] categories and the debtor's actual monthly expenditures for items categorized as Other Necessary Expenses [pt.5.15.1.9].

H.R.Rep. No. 109–31, at 13–15. (2005). Debtor argues that his additional $261.85 in food/clothing/personal care is necessary for his health and welfare and for production of income because he must have these items in order to work out of town. However, the IRS Financial Analysis Handbook at 5.15.1.10, ¶ 3 lists the categories specified as other necessary expenses as accounting and legal fees, charitable contributions, child care, court-ordered payments, dependent care, education, health care, involuntary deductions, life insurance, secured or legally perfected debts, and unsecured debts, taxes, telephone services, internet/E-mail, and repayment of loans made for payment of federal taxes, all of which must meet the necessary expense test. The Court notes that this extensive list does not include food and clothing which makes up the bulk of Debtor's additional $261.85. In addition, as discussed in more detail below the Court finds that the Debtor failed his burden to show that his additional $261.85 is necessary for his health and welfare of the production of income.

It is instructive to refer to IRS publications for guidance under the Local Standards. The IRS Financial Analysis Handbook in discussing National Standards provides in § 5.15.1.7, ¶ 3 that National Standards apply to "food, housekeeping supplies, apparel and services, and personal care products and services". The plain language of § 707(b)(2)(A)(ii)(I) provides that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amount specified under the National and Local Standards". *See In re Fowler*, 349 B.R. 414, 418 (Bankr.D.Del.2006).

Debtor's amended Schedule J lists a food expense, which he testified contains other items, in the amount of $700. His third Form B22C at Line 24 cites the National Standard for food, clothing, household supplies, personal care and miscellaneous in the amount of $703, for which no dispute exists. However, that is the cap allowed for food, clothing, household supplies, personal care and miscellaneous under § 707(b)(2)(A)(ii)(I) and the applicable National Standards, and the categories for "Other Necessary Expenses" allowed under § 707(b)(2)(A)(ii)(I) subsection do not include or provide an additional allowance for food, clothing, and personal care as Tuss contends. Thus, his additional $261.85 expenses for those categories are not allowable. The IRS National Standard limits Debtor's food, clothing, personal care expense to $703.00 and above-median debtors' expense deductions are governed by Form B22C, not by Schedule J. *Guzman*, 345 B.R. at 642–43; *In re Demonica*, 345 B.R. 895, 904 (Bankr.N.D.Ill.2006). Because Debtor's additional food/clothing/personal care expenses in the sum of $261.85 were subtracted from his income in arriving at the plan payment of $115.00, rather than the $372.44 monthly disposable income under § 1325(b)(2) stated at Line 58 of Form B22C, the Court finds that Tuss failed his burden under § 1325(b)(1)(B) to provide that all his projected disposable income will be applied to make plan payments, and confirmation of his amended Plan must be denied for failure of the "disposable income" test.

Other provisions of § 707(b)(2)(A)(ii) specify allowed additional expenses such as an additional allowance of 5% for food and clothing, which Tuss claimed at Line 44. If Congress intended for still more food and clothing expenses to be allowed in § 707(b)(2)(A)(ii), it would have drafted the subsection to include them in its detailed list of additional expenses.

■ A specific subsection exists allowing debtors to rebut the presumption of abuse "by demonstrating special circumstances, such as a serious medical condi-

tion or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative", § 707(b)(2)(B)(i), provided the presumption of abuse is rebutted if the additional expenses cause the product of the debtor's current monthly income when multiplied by 60 to be less than the distinct trigger points of § 707(b)(2)(B)(iv). This subsection is applicable in determining amounts reasonably necessary to be expended by the plain language of § 1325(b)(3), and so the Court will apply that test to the Debtor's $261.85 in additional food, clothing, and personal care expense.

This Court declines to adopt the separate and parallel analysis described in *Jass*, where the court presumed the number from Form B22C is the debtor's " 'projected disposable income' unless the debtor can show that a substantial change in circumstances has occurred such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future." *Jass*, 340 B.R. at 418. The court in *Jass* acknowledged that § 707(b)(2)(B) allows a debtor to rebut the presumption of abuse where the debtor can demonstrate special circumstances, which the court described as "similar to the Court's inquiry into whether a substantial change in circumstances exists." *Jass*, 340 B.R. at 418. The court also stated that it will look to the analysis required by § 707(b)(2)(B) for guidance whether a debtor has met his or her burden to show a substantial change in circumstances, and that a debtor attempting to meet that burden should present documentation similar to that required by § 707(b)(2)(B). This Court finds no statu-

tory authorization for the *Jass* court's "substantial change in circumstances" exception to the means test, and declines to adopt that separate test. [9]

In considering special circumstances, this Court looks directly to § 707(b)(2)(B), as specifically authorized by § 1325(b)(3), requiring itemized documentation of expenses and a detained explanation of the "special circumstances" that justify the additional expenses for which there is no reasonable alternative. *Demonica*, 345 B.R. at 903. This Court concurs with *Jass* that debtors should not expect the bottom line determined from Schedules I and J to trump the calculations of Form B22C. *See Jass*, 340 B.R. at 419.

The Court concludes that Debtor's evidence of special circumstances falls well short of satisfying § 707(b)(2)(B) such as serious medical condition or call to active duty. *In re Johns*, 342 B.R. 626, 629 (Bankr.E.D.Okla.2006) (potential for zero payment plan not a special circumstance under § 707(b)(2)(B)). Debtor argues that his $261.85 in additional food/clothing/personal care expense is necessary for him to produce income in his out of state employment, and for his health and welfare. However, this Court concludes that the Debtor failed to satisfy the element of showing that no reasonable alternative exists, and that he failed to show that the additional expenses are necessary for him to produce income or for his health and welfare.

The bulk of the $261.85 consists of restaurant and fast food expenses. Tuss testified that his food expenses are lower at home, where he presumably prepares his own meals in more conformity with his doctor's advice and health plan to treat his oncoming diabetes and high cholesterol.

---

**9.** The record in the instant case would not satisfy the *Jass* court's "substantial change in circumstances" test. Debtor offered no evidence showing a change in circumstances.

He failed to show why he cannot not reduce or eliminate his expenses for eating out by preparing his own meals. If Tuss prepared his own meals while on the road [10] in a similar manner to how he eats at home, he would have no need to incur the expense of eating at fast food restaurants that he acknowledged is inconsistent with his medical and health plan and detrimental to his condition. Staying at his lodging for meals would also allow Tuss more time for his paperwork since he would not spend time driving to and from restaurants and waiting to be served.

Section 707(b)(2)(B)'s "special circumstances" contemplates circumstances beyond a debtor's reasonable control, such as a "serious medical condition, or a call or order to active duty in the Armed Forces". In this Court's view, "special circumstances" does not include a debtor's desire to eat out at restaurants when working away from home, even when that practice is inconsistent with the debtor's health plan and aggravates the debtor's medical condition. No detailed explanation exists in the record, as required by § 707(b)(2)(B), showing why Tuss cannot prepare his own meals instead of eating out and why his additional $261.85 in food/clothing/personal care expense is necessary and reasonable and that no reasonable alternative exists. *See, e.g., In re Renicker,* 342 B.R. 304, 310 (Bankr. W.D.Mo.2006) (no showing that no reasonable alternative exists to the extraordinary transportation and other expenses).

As a result of Debtor's amended Plan failing to provide for payments in accordance with Form B22C, and failing to satisfy the test under § 707(b)(2)(B) to show special circumstances to justify additional expenses, confirmation of Debtor's amended Plan must be denied for failure to satisfy the "disposable income" test under § 1325(b)(1)(B), as determined by reference to §§ 1325(b)(2) and (b)(3) and § 707(b)(2)(A)(ii) & (b)(2)(B). Tuss testified that when his job in Riverton ends on November 8, 2006, he does not know whether he can make the payments required under Form B22C. Based on this admission the Court could order this case dismissed immediately. However, the Court will allow the Debtor a final opportunity and a period of twenty (20) days to evaluate his circumstances and this Memorandum, and to determine whether he wishes to file another amended Plan.

### CONCLUSIONS OF LAW

1. This Court has original jurisdiction in this Chapter 13 case pursuant to 28 U.S.C. § 1334(a).

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) involving confirmation of a plan.

3. The Debtor failed his burden of proof to show that the "disposable income" requirement of 11 U.S.C. § 1325(b)(1)(B) has been satisfied after application of §§ 1325(b)(2), 1325(b)(3), and §§ 707(b)(2)(A) and (B).

**IT IS ORDERED** a separate Order shall be entered in accordance with the above sustaining the Chapter Trustee's "disposable income" objection, denying confirmation of Debtor's Chapter 13 Plan filed September 6, 2006; and granting the Debtor twenty (20) days to file a further amended Chapter 13 Plan which satisfies all requirements of § 1325.

---

**10.** No evidence exists in the record of the nonavailability of motels with kitchenettes in Riverton where Tuss was most recently employed. But Tuss's amended Schedule J states that his company puts him up in a motel room and he is responsible for his meals. The lack of evidence weighs against Tuss as the party with the burden of proof.