**In re Dwayne A. McCARTY, Julia McCarty, Debtors.**

No. 06–51875.

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

Sept. 28, 2007.

Keith Rucinski, Akron, OH, for Chapter 13 Trustee.

Lee Kravitz, Cleveland, OH, for Debtors.

MEMORANDUM OPINION AND ORDER RE: CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION OF DEBTORS' PROPOSED PLAN AND MOTION TO DISMISS CASE

MARILYN SHEA–STONUM, Bankruptcy Judge.

This matter comes before the Court on the following pleadings: (1) the chapter 13 trustee's "Objection to Confirmation and Motion to Dismiss" [docket # 21]; (2) debtors' response and brief in opposition to the chapter 13 trustee's objection to confirmation and motion to dismiss [docket # 25]; (3) debtors' supplemental brief [docket # 28] and (4) the chapter 13 trustee's supplemental brief [docket # 30]. Appearing at the initial hearing on the matter were Keith Rucinski, counsel for the chapter 13 trustee and Lee Kravitz, counsel for debtors. This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984. It is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O), over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334.

## I. BACKGROUND FACTS

During the hearing, counsel represented that the pertinent facts in this case are not in dispute and neither party chose to present any evidence in support of their respective positions. Instead, each party relied upon their written pleadings and argument of counsel.

1. Debtors initiated their chapter 13 case on September 25, 2006 and their initially filed chapter 13 plan [docket # 2] did not set forth a dividend to be paid to creditors holding allowed unsecured claims ("unsecured creditors"). Debtors filed an amended chapter 13 plan [docket # 17] that proposed to pay a 10% dividend to unsecured creditors

2. Debtors filed a second amended plan [docket # 20] (the "Proposed Plan") that proposes to pay a 28 % dividend to unsecured creditors and the chapter 13 trustee filed his objection to confirmation of that Proposed Plan [docket # 21].

3. This case is governed by the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Accordingly, debtors were required to file a completed Form B22C "Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income" (the "Means Test Form"). *See* FED. R. BANKR.P. (Interim) 1007(b)(6).

4. The trustee does not dispute the manner by which debtors completed their Means Test Form. Pursuant to their completed Means Test Form debtors have an "Annualized current monthly income for § 1325(b)(4)" of $75,432.00. *See* Means Test Form Line 15 [docket # 1]. Because debtors' annualized income is greater than the "Applicable median family income" for a two person household in the State of Ohio ($46,250.00), they are "above median income" debtors and the applicable commitment period for the Proposed Plan is five years. *See* Means Test Form Lines 17 and 23 [docket # 1]. *See also* § 1325(b)(4)(A)(ii) (2005).

5. All three of debtors' filed plans propose a fixed monthly payment to the trustee of $1,003.00 per month which includes payments of $800.00 on account of secured claims and $173.37 on account of general unsecured claims.[1] The proposed monthly amount to be paid on account of general unsecured claims ($173.37) is derived from debtors' calculation of their "Monthly Disposable Income Under § 1325(b)(2)" as set forth on Line 58 of the Means Test Form. [Docket # 1].

6. Debtors' Schedule I shows total combined income of $5,131.00 per month and their Schedule J shows total expenditures of $3,473.00 per month resulting in monthly net income of $1,658.00.

7. The delta between debtors' monthly net income ($1,658.00) and debtors' proposed monthly payments under the Proposed Plan ($1,003.00) equals $655.00 (the "Delta Sum").

8. Pursuant to the chapter 13 trustee's calculations, if this case were to proceed under chapter 7, creditors would not receive any distribution on their claims. Accordingly, the Proposed Plan passes the equity test set forth in 11 U.S.C. § 1325(a)(4) (2005).

9. There is no dispute as to whether the Proposed Plan was filed in good faith.

## II. DISCUSSION

The burden is on debtors to establish that the Proposed Plan is confirmable. If the chapter 13 trustee objects to confirmation, a plan cannot be confirmed unless it "provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B) (2005) (emphasis added). The issues presented in this case are how debtors' "projected disposable income" is to be calculated for purposes of § 1325(b)(1)(B) and whether it should include some or all of the Delta Sum.

Before BAPCPA was enacted, "disposable income" was defined as "income which is received by the debtor and which is not reasonably necessary to be expended ... for the maintenance and support of the

---

1. The $29.63 balance between the monthly payments under the Proposed Plan ($1,003.00) and the total amount being paid on account of secured and unsecured debt ($973.37) is, presumably, for the chapter 13 trustee's administrative fee. *See* 28 U.S.C. § 586(e) (2005). The parties did not provide any breakdown of what comprises debtors' proposed $1,003.00 monthly payment.

debtor or a dependent of the debtor . . . ." 11 U.S.C. § 1325(b)(2)(A) (1994). Generally, a debtor's disposable income was determined by subtracting the expenses listed on Schedule J from the income listed on Schedule I [2] and, for purposes of determining whether a debtor was using all of his "projected disposable income" to fund a plan, the difference between Schedule I and J was multiplied by the proposed length of debtor's plan. *See, e.g., In re Norris,* 165 B.R. 515 (Bankr.M.D.Fla. 1994).

BAPCPA changed the Code's definition of "disposable income" through amendments to § 1325(b)(2). Pursuant to those amendments, "disposable income" for above median income debtors is "current monthly income," less specific expenses enumerated in § 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(2)(A), (b)(3) (2005). *See also In re Fuller,* 346 B.R. 472, 476 (Bankr.S.D.Ill.2006).[3] "Current monthly income," a new term added by BAPCPA, is defined as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income . . ." derived during the 6–month period preceding the petition date. 11 U.S.C. § 101(10A) (2005). The calculation of "current monthly income" specifically ex-

cludes, *inter alia,* benefits received under the Social Security Act. 11 U.S.C. § 101(10A)(B) (2005).

Debtors argue that the "disposable income" calculated pursuant to § 1325(b)(2) for purposes of completion of the Mean Test Form, should be the only number considered in determining whether a chapter 13 plan can be confirmed over the trustee's objection, pursuant to § 1325(b)(1)(B). According to debtors, their "projected disposable income" must be calculated by taking the § 1325(b)(2) "disposable income" number and multiplying it by the applicable commitment period (which in this case is five years). Under this interpretation, debtors' actual ability to pay additional funds into their plan for the benefit of unsecured creditors is irrelevant for purposes of plan confirmation.[4]

The chapter 13 trustee argues that the information on the Means Test Form should be the starting point in determining "projected disposable income" but the actual amount debtors must pay into the plan is still ultimately controlled by the information listed on Schedules I and J. According to the chapter 13 trustee, if above median debtors have an ability to pay additional funds into then-plan for the benefit of unsecured creditors then, unless

---

**2.** Parties in interest could challenge the information listed on a debtor's Schedule I or J. *See, e.g. In re McKown,* 227 B.R. 487 (Bankr. N.D.Ohio 1998) (Schedule J monthly mortgage payments on real property in which debtors did not reside were challenged as not being "reasonably necessary for the maintenance or support" of debtors or their dependents).

**3.** Those expenses are set forth on lines 24 through 51 of the Means Test Form and the total of all deductions allowed under § 707(b)(2) is reported on line 52 of the Means Test Form.

**4.** The brief submitted by debtors' counsel in support of their argument appears to be an *exact* replica of a model brief (the "Model Brief") prepared by the National Association of Consumer Bankruptcy Attorneys. *See* Trustee's Response [docket # 30] at ¶ 7. With the exception of one paragraph at the beginning of debtors* brief which sets forth a very short summary of the facts of this case, debtors' counsel has not modified the Model Brief to specifically address the facts of this case or to address any of the relevant bankruptcy court opinions that have been issued since the Model Brief was drafted. There is also no indication by debtors' counsel that the Model Brief has been copied.

such funds are committed to the plan, the plan cannot be confirmed over the trustee's objection.

The issues raised in this case have not yet been addressed by this Court. The decisions of the courts that have considered the same or similar issues fall, generally, into one of two "camps." The first "camp" finds that the word "projected" cannot impact the way "disposable income" is now calculated and, thus, holds that "projected disposable income" is determined by taking the "disposable income" number calculated pursuant to § 1325(b)(2) for purposes of completion of the Mean Test Form and multiplying that figure by the number of months of the proposed plan. *See, e.g., In re Hanks,* 362 B.R. 494 (Bankr.D.Utah 2007); *In re Tuss,* 360 B.R. 684 (Bankr.D.Mont.2007); *In re Rotunda,* 349 B.R. 324 (Bankr.N.D.N.Y. 2006); *In re Guzman,* 345 B.R. 640 (Bankr.E.D.Wis.2006); *In re Alexander,* 344 B.R. 742 (Bankr.E.D.N.C.2006); In *re Barr,* 341 B.R. 181 (Bankr.M.D.N.C.2006). To support this finding, courts in the first "camp" rely upon the "plain meaning" of the statutory provisions at issue.

> It thus appears that once section 1325(b) was adopted, a debtor's ability to pay became a matter to be addressed under section 1325(b)....While BAPCPA made significant changes to section 1325(b), nothing in those changes or elsewhere in BAPCPA suggests any legislative intent that any section of the Bankruptcy Code other than section 1325(b) should be controlling in dealing with a Chapter 13 debtor's ability to pay.... Calculating "disposable income" for above-median-income debtors under new section 1325(b) is now separated from a review of Schedules I and J and no longer turns on the court's determination of what expenses are reasonably necessary for the debtor's support....

The controversy in this case is not about whether the pertinent language of revised section 1325(b) is ambiguous ... [r]ather, the controversy is about and derives from the result of applying the language in the statute as written. Depending upon whether a debtor's actual expenses and deductions are greater or less than those specified in section 707(b)(2), an above-median-income debtor may have "excess" income that such debtor is not required to commit to the payment of unsecured creditors. The Trustee argues that such a result is unfair and contrary to the way that Chapter 13 should work and has worked in the past. However, the language of section 1325(b)(3) is unambiguous in requiring that the expenses and deductions of above-median-income debtors be determined under section 707(b)(2)(A) and (B). When the language of a statute is plain, the sole function of the courts is to enforce the statute according to its terms unless the disposition required by the text is absurd.... While many sources question whether sections 707(b)(2) and 1325(b) represent a fair and effective approach to catching the abusers of the bankruptcy system or insuring the debtors who can pay do, the court does not believe that the result in this case of applying section 1325(b)(3) as written can be rejected as being absurd. Therefore, even if the Trustee's criticism of section 1325(b) is correct, this court is not free to ignore revised section 1325(b).... To do so, the court believes, would impermissibly undermine policy choices made by Congress.... While there may be sound reasons to rewrite section 1325(b), it is not the role of this court to do so.

*In re Barr,* 341 B.R. 181, 185–86 (Bankr. M.D.N.C.2006).

The second "camp," while acknowledging that the definition of "disposable income" was changed by BAPCPA, finds that the word "projected" must be given meaning. *See, e.g., Kibbe v. Sumski (In re Kibbe),* 361 B.R. 302 (1st Cir. BAP 2007); *In re Meek,* 370 B.R. 294 (Bankr.D.Idaho June 27, 2007); *In re Plumb,* 373 B.R. 429 (Bankr.W.D.N.C.2007); *In re Slusher,* 359 B.R. 290 (Bankr.D.Nev.2007); *In re Edmunds,* 350 B.R. 636 (Bankr.D.S.C.2006); *In re Fuller,* 346 B.R. 472 (Bankr.S.D.Ill. 2006); *In re Jass,* 340 B.R. 411 (Bankr. D.Utah 2006). This "camp" rejects a purely mathematical approach to the determination of "projected disposable income" as ignoring the specific language used by Congress in drafting § 1325(b)(1)(B).

> [T]he language of § 1325(b)(1)(B) is clear and unambiguous—section 1325(b)(1)(B)'s requirement that a plan propose to pay "projected disposable income" means that the number resulting from Form B22C [the Means Test Form] is a starting point for the Court's inquiry only. Section 1325(b)(2) defines "disposable income" but § 1325(b)(1)(B) requires that a debtor propose a plan paying *"projected* disposable income." (emphasis added). The Court must give meaning to the word "projected," as it obviously has independent significance. The word "projected" means "[t]o calculate, estimate, or predict (something in the future), based on present data or

trends." Thus, the word "projected" is future-oriented. By definition under § 1325(b)(2), the term "disposable income" is oriented in historical numbers. By placing "projected" next to "disposable income" in § 1325(b)(1)(B), Congress modified the import of "disposable income." The significance of the word "projected" is that it requires the Court to consider both future and historical finances of a debtor in determining compliance with § 1325(b)(1)(B).

To require all debtors to propose plans paying the number resulting from Form B22C would essentially ignore the word "projected" and give meaning to only the term "disposable income." The only way for the word "projected" to have independent significance is if the word modifies the term "disposable income."

This interpretation is confirmed by the Court's requisite assumption that Congress intended to include the word "projected" in § 1325(b)(1)(B), even though that word was omitted in § 1325(b)(2).

*In re Jass,* 340 B.R. 411, 415–16 (Bankr. D.Utah 2006) (footnote omitted).[5]

■■■ This Court agrees with the finding of the second "camp" that the word projected cannot be ignored and must be given some independent meaning. Ac-

---

**5.** Interestingly, the court in *Jass* was dealing with the same arguments presented in this case although such arguments were being made by the opposite party. In that case, the disposable income number calculated pursuant to § 1325(b)(2) for purposes of the Means Test Form was much higher than the amount that debtors proposed to pay to unsecured creditors under the plan. The chapter 13 trustee objected to confirmation of the plan and argued that the "disposable income" number reported on the Means Test Form multiplied by the applicable commitment period should be deemed debtors' "projected

disposable income" for purposes of § 1325(b)(1)(B). *In re Jass,* 340 B.R. 411, 414 (Bankr.D.Utah 2006). Debtors argued that the word "projected" must be given some independent meaning and that the historically calculated "disposable income" number reported on the Means Test Form was not indicative of the amount of income debtors could actually expect to receive over the life of their plan given serious medical problems experienced by debtor-husband shortly after their chapter 13 was filed and the medical expenses they will be required to pay during the life of the plan. *Id.*

cordingly, this Court will not adopt debtors' purely mechanical approach to determining "projected disposable income." The trustee's approach to determining "projected disposable income" is also not well taken to the extent that it relies solely on information listed on Schedules I and J to determine whether debtors have additional funds available to pay into a chapter 13 plan. The problem with this approach is that it ignores the fact that Congress has re-defined "disposable income" to now specifically exclude certain items which may be reflected on a debtor's Schedule L Pursuant to BAPCPA, the following categories of income (collectively, the "Disposable Income Exclusions") are no longer included in the disposable income determination under chapter 13:

1. benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism ... or domestic terrorism ... on account of their status as victims of such terrorism [§ 101(10A)(B)]; and

2. child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child ... [§ 1325(b)(2)].

*Kibbe v. Sumski (In re Kibbe)*, 361 B.R. 302, 312 (1st Cir. BAP 2007).

■ In order to give meaning to (1) the word "projected" and (2) the new definition of "disposable income," this Court finds that "projected disposable income" under § 1325(b)(1)(B) must reflect all of the income that debtors anticipate receiv-

ing over the applicable commitment period *minus* any Disposable Income Exclusions. Such finding is bolstered by the fact that BAPCPA did not amend § 1329(a)(1) of the Code which provides that

At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan.

11 U.S.C. § 1329(a)(1) (2005). If a debtor's payments under a chapter 13 plan were to be conclusively fixed by "disposable income" calculated pursuant to § 1325(b)(2) for purposes of completion of the Mean Test Form, modification of such payments after confirmation would appear to be impermissible and § 1329(a)(1) would be rendered meaningless in most chapter 13 cases.

## III. CONCLUSION

■ Based upon the foregoing the Court finds that the starting point for calculating debtors' "projected disposable income" for purposes of § 1325(b)(1)(B) is their "disposable income" calculated pursuant to § 1325(b)(2) and reported on Line 58 of the Means Test Form multiplied by the applicable commitment period (which in this case is five years). Because the starting point in this case does not appear to accurately reflect the amount of income that debtors can anticipate receiving over the applicable commitment period, debtors have not met their burden of demonstrating that all "projected disposable income" is being used to fund the Proposed Plan.[6] Accordingly, the Proposed Plan cannot be

---

**6.** There was no evidence presented as to whether or not the income listed on debtors' Schedule I includes any Disposable Income Exclusions.

confirmed. Debtors shall have until not later than 30 days from the date of the entry of this Memorandum Opinion and Order to amend their Proposed Plan.