**In re Robert J. RIECK and Joanne Rieck, Debtors.**

**No. 09–35677.**

United States Bankruptcy Court, D. Minnesota.

April 16, 2010.

142

Thomas H. Olive, Olive Taber P A, Bloomington, MN, for Debtor.

Patti J. Sullivan, St. Paul, MN, Trustee.

## ORDER DISMISSING CASE PURSUANT TO 11 U.S.C. § 707(b)(1)-(3)

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court for an evidentiary hearing on the United States Trustee's motion to dismiss the above-captioned case under 11 U.S.C. § 707(b)(1)[1] based on the presumption of abuse under 11 U.S.C. § 707(b)(2) and, in the alternative, based upon the totality of the circumstances under 11 U.S.C. § 707(b)(3). Colin Kreuziger appeared on behalf of the U.S. Trustee, and Thomas Olive appeared on behalf of the debtors. At the conclusion of the trial, the Court took the matter under advisement. Being now fully advised, the Court makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## FINDINGS OF FACT

On August 14, 2009, the debtors filed a Chapter 7 petition, and on August 27, 2009, filed supporting schedules. The UST filed a motion to dismiss on October 29, 2009, and the debtors filed a response on November 30, 2009.

The debtors scheduled $931,137.33 in debt, consisting of $514,414.19 secured by a mortgage on the debtors' homestead, and security interests in two vehicles, a 2009 Honda Accord and a 2007 Mazda RX8; $6,912.91 in priority debt for income taxes owing to the United States and the State of Minnesota; and $409,810.23 in general unsecured debt, including $382,251.23 in credit card debt and $27,559 in student loan debt. The debtors' debts are primarily consumer debts. The debtors are ineligible to proceed under Chapter 13 due to their high unsecured debt.

The debtors have current monthly income, as defined by 11 U.S.C. § 101(10A), of $11,340.74. The parties agree that this figure is accurate and that it includes monthly income in the amount of $158.10 attributable to the debtors' sale of savings bonds during the six month period prior to filing this case. The debtors have a household of four and are residents of Washington County, Minnesota. The debtors' current monthly income exceeds the applicable median income for a family of four in Minnesota. The debtors are ages 47 and 54, and they have two children that live with them, ages 16 and 19.

The debtors own four automobiles. Liens encumber two of the vehicles, and two of the vehicles are not encumbered with any security interests. One of the two unencumbered automobiles is a 1996 Honda Accord with 193,000 miles.

The debtors have at least $10,656.98 in expenses as indicated on Form B22A. The following chart lists the disputed line items from the debtors' original Form B22A and the UST's pro forma calculations.

---

1. Section 707(b)(1) provides: After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

| Line | | Debtor | UST | Amount in Dispute |
|---|---|---|---|---|
| 22A. | Vehicle operation | $574.00 | $374.00 | $200.00 |
| 42. | Chapter 13 admin expense | $665.24 | $0 | $665.24 |
| 47. | Total expenses | $11,522.22 | $10,656.98 | $865.24 |
| 50. | Monthly disposable income | ($181.48) | $683.76 | $865.24 |
| 51. | 60–month disposable income | ($10,880.80) | $41,025.60 | $51,914.40 |

The debtors have actual gross monthly income of $11,184.64. In addition, the debtors pay $2,510.13 per month for payroll, FICA, and Medicare taxes, $261.69 per month for health insurance, $57.40 per month in union dues for Ms. Rieck, $856.33 per month to service 401k loans, $36 per month for term life insurance policies, $100 per month for Ms. Rieck's medical flex spending account, and $428.83 per month in voluntary contributions to Mr. Rieck's retirement account.

The debtors own a homestead that is encumbered by a mortgage held by Wings Financial Credit Union. Wings Financial obtained relief from the automatic stay on September 23, 2009, but the debtors negotiated a loan modification on December 29, 2009. The debtors' new loan requires them to pay $3,214.03 per month for principal, interest, taxes, and insurance. In addition, the new loan requires a balloon payment of the remaining balance on October 1, 2016.

The debtors have three 401k accounts with a total value of approximately $130,000. The debtors borrowed money from Ms. Rieck's 401k account on three occasions prior to filing this case. The terms of each loan require the debtors to make bi-weekly payments until the loan balance is paid in full. One of the loans was paid in full as of September 12, 2009. The other two loans are scheduled to be paid in full by June 27, 2012, and October 1, 2013. The average monthly payment amounts required by the terms of the remaining loan agreements are $668.02 and $188.31, respectively.

The debtors have actual monthly expenses of at least $6,501.15.[2] The following chart lists the disputed line items from the debtors' original Schedule J and the UST's pro forma calculations.

| Line | | Debtor | UST | Amount in Dispute |
|---|---|---|---|---|
| 1. | Rent/Home Mortgage Payment | $3,214.03 | $1,455.00 | $1,759.03 |
| 18. | Average Monthly Expenses | $7,888.74 | $6,501.15 | $1,436.92 |

The parties agree that the IRS standards applicable to the debtors are:

Rent/home mortgage payment: $1,455

Utilities: $501

Food, Clothing, and other items: $1,370

Out of pocket health care expenses: $240

Transportation ownership expenses: $978

The debtors' residence is a four bedroom, four bath, 3600 square feet home in an upscale suburban neighborhood. They spend approximately $250 each month for cable and internet services with a premium channels package, $200 for cell phone ser-

2. The debtors' expenses include Ms. Rieck's additional living expenses of $350 per month because her employer, Delta Airlines, recently transferred her place of employment to Atlanta, Georgia.

vice, $60 for land line phone service, and $1000 for utility expenses. Mr. Rieck voluntarily contributes approximately $430 every month to his retirement account. He is 47 years old and plans to retire in twenty years around the age of 67.

The U.S. Trustee asserts, and the debtors conceded at trial, that the debtors' disposable income is in excess of $182.50,[3] and that therefore this case is presumed to be an abuse under § 707(b)(2).[4] The debtors, however, have invoked the special circumstances exception. The UST argues that even if the debtors could successfully rebut the § 707(b)(2) presumption, the filing nevertheless constitutes an abuse under the totality of the circumstances pursuant to § 707(b)(3). For the reasons set forth below, the Court finds that the debtors have failed to rebut the presumption of abuse under § 707(b)(2), and that the case must accordingly be dismissed, or converted to a case under Chapter 11.

## DISCUSSION

Both parties agree that a § 707(b)(2)(A) presumption of abuse is unequivocally established and that the burden is on the debtor to rebut the presumption based upon special circumstances under § 707(b)(2)(B).

Section 707(b)(2)(B) provides:

(B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide—

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(III) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

**3.** The plain language of 11 U.S.C. § 707(b)(2)(A)(ii)(III) does not permit debtors that are ineligible for Chapter 13 to deduct Chapter 13 administrative expenses as part of the means test calculation ("for a debtor eligible for chapter 13, the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees").

**4.** Section 707(b)(2)(A) provides, in relevant part: (A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debt-

or's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,025, whichever is greater; or (II) $11,725. "[I]f after deducting all allowable expenses, the debtor has less than $100 per month in disposable income, then the filing is not presumed abusive. If the debtors have monthly disposable income of more than $182.50, then the filing is presumed abusive. If monthly disposable income is between $101 and $182.50, then the case will be presumed abusive if that sum, when multiplied by sixty, will pay 25% or more of the debtors' non-priority unsecured debts." *See In re Foldenauer*, 403 B.R. 801, 802 (Bankr.D.Minn.2009).

(IV) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims, or $7,025, whichever is greater; or

(II) $11,725.

*See* 11 U.S.C. § 707(b)(2)(B).

■ "There is only one way to rebut the presumption of abuse." *See In re Willis*, 408 B.R. 803, 810 (Bankr.W.D.Mo.2009). "A debtor must demonstrate 'special circumstances' that justify an increase in the expenses or a reduction of the income used to calculate whether a presumption of abuse arises under § 707(b)(2)(A)." *Id.* "The requirements for demonstrating special circumstances are fairly exacting." *Id.* "A debtor must provide: '(I) documentation for such expense or adjustment to income; and (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.' " *Id.*

■ "In the event a debtor believes that special circumstances apply, the debtor is required to itemize each additional expense or adjustment of income and provide, among other things, a detailed explanation of the special circumstances that may make such expenses or adjustment to income necessary and reasonable." *See In re Samson*, 2008 WL 2949259 (Bankr.D.Neb.2008), citing 11 U.S.C. § 707(b)(2)(B)(ii)(II).

■ "As indicated, the Bankruptcy Code specifically delineates two special circumstances: (1) a serious medical condition; or (2) active duty in the Armed Forces." *Id.* "Certainly, those two items are not an exhaustive list, but are examples of what Congress intended to constitute special circumstances." *Samson*, 2008 WL 2949259.

■ "[R]ebutting the presumption of abuse requires circumstances that are truly special." *Id.* "Although this presumption may be rebutted, § 707(b) goes on to set this bar extremely high, placing it effectively off limits for most debtors." *Id.*, citing *In re Haar*, 360 B.R. 759 (Bankr. N.D.Ohio 2007); *In re Fernando*, Case No. BK06–81855 (Bankr.D.Neb. Mar. 1, 2007) (finding that unusually high commissions earned during the six-month period pre-bankruptcy do not constitute special circumstances); *In re Hanks*, 362 B.R. 494 (Bankr.D.Utah 2007) (finding a job loss and lower income at new employment do not constitute special circumstances); *In re Sparks*, 360 B.R. 224 (Bankr.E.D.Tex. 2006) (comparing special circumstances to an "unanticipated development").

■ In order to make a finding of special circumstances, the Court must be able to conclude that "the Debtors have 'no reasonable alternative.' " *See In re Wagner*, 2008 WL 706616 (Bankr.D.Neb.2008), citing 11 U.S.C. § 707(b)(2)(B)(i). "[T]he bar is set extremely high." *Wagner*, 2008 WL 706616.

■ " 'Special circumstances' does not include a 'desire to remain living wherever [the debtors] choose,' *In re Tranmer*, 355 B.R. 234, 251 (Bankr.D.Mont.2006), but should 'rise to the same level as [the statutorily recognized examples of] a serious medical condition or a call to active duty.' " *See In re Delunas*, 2007 WL 737763 (Bankr.W.D.Mo.2007), citing *In re Johns*, 342 B.R. 626, 629 (Bankr.E.D.Okla.2006). "In general, 'special circumstances' are 'circumstances beyond a debtor's reason-

able control, such as [the examples given in § 707(b)(2)(B)(i) ].'" *Delunas,* 2007 WL 737763, citing *Tranmer,* 355 B.R. at 251; *In re Tuss,* 2007 WL 442051, *15 (Bankr.D.Mont.2007).

The debtors' special circumstances argument is based upon Chapter 13 administrative expense fees under a hypothetical 100% Chapter 13 repayment plan; expenses related to service four household automobiles, in particular the two older, unencumbered vehicles; and the single pre-petition savings bond distribution income.

■ Just by eliminating the initially included expense for Chapter 13 administrative fees, the debtors' income and expenses indicate a surplus of $483.76, more than double the $182.50 necessary to rise to a presumption of abuse.[5] There is no provision in the Bankruptcy Code to include a Chapter 13 administrative expense as part of the means test for debtors ineligible to file under Chapter 13.[6] However, the Riecks could proceed under Chapter 11, and the UST bankruptcy analyst on this case testified that Chapter 11 quarterly fees would be approximately $217 for the Riecks. Therefore, even in a Chapter 11 setting, all other factors or potential income and expense modifications aside, the debtors would generate a monthly surplus of approximately $410. There is no legitimate way to include the hypothetical Chapter 13 administrative expense as

scheduled, and under any modification the result is a sizeable surplus. Accordingly, this item does not present as a special circumstance as contemplated by the exception.

■ The second special circumstance alleged by the debtors is an additional $200 monthly automobile expense. The debtors own four vehicles, two of which are unencumbered. The $200 reflects additional operating expenses on the two non-encumbered vehicles utilized by the debtors' children to go back and forth to school. Absent utilizing these vehicles for that purpose, the debtors contend that they would simply incur additional wear and tear expenses on their primary vehicles. This, the debtors argue, constitutes a special circumstance and should be an allowed expense. The Court finds no basis to allow the extra vehicle expense as part of the means test calculation. Section 707(b)(2)(A)(ii)(I) provides, in pertinent part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the

---

**5.** Even if a debtor ineligible for Chapter 13 includes a Chapter 13 administrative expense as part of the means test, the amount in this case has been inflated, and the actual amount renders a healthy surplus in any event. The Chapter 13 trustee fee in the District of Minnesota is 9.4%. Therefore, the actual administrative costs of a hypothetical Chapter 13 case for the Riecks is $45.47. That would result in total monthly expenses of $10,902.45, all other issues aside, and a surplus of approximately $438.29.

**6.** *See Fonder v. United States,* 974 F.2d 996, 999 (8th Cir.1992) ("We have never held that, to be dismissed under § 707(b), a debtor must be eligible for Chapter 13 relief. In some cases, despite a substantial abuse dismissal, the debtor may not qualify under Chapter 13."); *In re Makinen,* 239 B.R. 532, 536 n. 1 (Bankr.D.Minn.1999) (noting that "whether or not Makinen [debtor] would be otherwise eligible for Chapter 13 relief is another matter, not ripe to consider and not relevant for purposes of § 707(b)" (citing *Fonder,* 974 F.2d at 999)).

spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. *See* 11 U.S.C. § 707(b)(2)(A)(ii)(I).

The plain language of § 707(b)(2)(A)(ii)(I) creates two categories of expenses: "the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards" and "the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides." *Id.*

In *In re Washburn*, 579 F.3d 934, 936–940 (8th Cir.2009), the Eighth Circuit distinguished between the two categories of expenses and held that the plain language approach results in the proper interpretation of the statute: "The vehicle-ownership expense at issue in the present case is one of the 'applicable monthly expense amounts' specified in the IRS's Local Standards as a transportation expense ... [and] [i]t is undisputed that the separate term, 'actual monthly expenses,' refers to expenses that the debtor in fact incurs."

The Court in *Washburn* rejected the "Internal Revenue Manual" approach. *Id.* at 937. The National and Local Standards permit a deduction of $374 for the operation of two or more vehicles, and there is no basis to permit an additional deduction for operating costs associated with the debtors' older automobiles.[7] Moreover, the debtors have not presented evidence sufficient to demonstrate four cars in a household of four people as either a necessary or an actual expense. Accordingly,

this expense must be excluded from the calculation and does not constitute a special circumstance.

■ With respect to the savings bond income, the debtors argue that because the $158.10 in income per month attributable to the pre-petition sale of certain savings bonds was a one-time occurrence, is not ongoing additional income, and was merely part of the calculation because it was funding that occurred within the commitment period prior to filing, it constitutes a special circumstance, and should be disregarded by the Court in calculating income.

The Court agrees generally that one time pre-petition payments are of little practical significance and largely unhelpful in determining a debtor's going forward capacity to fund a repayment plan. However, it is unlikely that the a debtor's voluntary pre-petition liquidation of an asset would rise above the extremely high special circumstances bar, constitute an unexpected development, or be interpreted as a critical event beyond the control of the debtor to which there is or was no alternative. In this case, this item is not dispositive in any event, because by eliminating or adjusting the other speciously claimed special circumstance expenses (Chapter 13 administrative fees and additional automobile maintenance costs), a reduction of the debtors' income by $158.10 still leaves a surplus in excess of $182.50.[8]

■ "In order to rebut the presumption under special circumstances, it is up to Debtors to show that their particular circumstances are 'special,' and not simply

---

7. *See In re Koch*, 408 B.R. 539, 545 (Bankr. S.D.Fla.2009) ("The Court finds however, that the transportation allowances contemplated by the statute are the set amounts of the National Standards and Local Standards. These standards do not include an additional operating allowance for older or high mileage unencumbered vehicles.")

8. If the Court subtracts $158.10 from either the $483.76 surplus (having completely eliminated a Chapter 13 administrative expense) or from $438.29 (having reduced a Chapter 13 administrative expense to $45.47), or from $410 (having replaced a hypothetical Chapter 13 administrative expense with quarterly Chapter 11 fees), the result either way exceeds $182.50, and the debtors cannot rebut the presumption. With the additional $200

the same circumstances faced by any other family in the locality in which Debtors live." *See In re Herbert*, 2007 WL 6363172 (Bankr.D.Neb.2007), citing *In re Starkey*, Case No. BK06–81473 (Bankr.D.Neb. Jan. 25, 2007) (holding that living in an expensive area is not a sufficient "special circumstance" under 11 U.S.C. § 707(b)(2)(B)(i) to rebut the presumption of abuse); *In re Tranmer*, 355 B.R. 234, 251 (Bankr. D.Mont.2006) (stating "[i]n this Court's view, 'special circumstances' does not include debtor's desire to remain living wherever they choose...."); *In re Renicker*, 342 B.R. 304, 310 (Bankr.W.D.Mo. 2006) (no showing that no reasonable alternative exists to the extraordinary transportation and other expenses).

The Riecks have failed to demonstrate special circumstances under § 707(b)(2)(B)(i), and accordingly the presumption of abuse under § 707(b)(2)(A) is sustained.

Section 707(b)(3) provides:

(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—

    (A) whether the debtor filed the petition in bad faith; or

    (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

*See* 11 U.S.C. § 707(b)(3).

It is uncontested that the presumption of abuse arose at the outset in this case,

---

automobile maintenance expense also disallowed, the surplus is substantial by any meas-

and the Court has now concluded that the debtors have failed to rebut the presumption. Therefore, the Court need not consider the matter under § 707(b)(3).

## DISPOSITION

IT IS HEREBY ORDERED:

1. The United States Trustee's motion to dismiss for substantial abuse pursuant to 11 U.S.C. § 707(b)(2) is GRANTED; and

2. The case shall be dismissed unless the debtors convert the case to a case under Chapter 11 within ten days of the date of this Order.

---

ure, whether or not the $158.10 is considered.